· GUNN vs. THE CENTRAL RAILROAD et al.

74 509
107 179

1. Where a question is not made by the pleadings in a case, this court will not, on request, decide abstract principles connected therewith. Such a decision would be *obiter*.

(a.) The pleadings in this case do not broadly raise the question as to the power of a railroad corporation to engage in the business of purchasing and running boats on the rivers of this state, and how far they would be liable to passengers on their boats for injuries done in consequence of the negligence of their agents and employés in conducting that particular business.

2. The powers of a corporation are limited and fixed by the act of incorporation, and besides the powers thus specially granted, it has those which are common to all corporations. The power to form a partnership is not one of those which is common to all corporations; and where the charter of a railroad conferred no such power upon it, it had no authority to enter into a partnership with a natural person to run a line of boats and carry passengers, and its acts and contracts pertaining to the business of such an association are invalid as against the firm and the corporation as a member thereof; and it is not liable to an action for a tort arising from a breach of duty created by a contract of such a firm.

(a.) A legislative act incorporating a railroad, and published by authority, is a public law.

(b.) The act of 1881 (Code, §1689(o)) contemplated that railroad companies were to be the separate and exclusive owners of such boats or vessels as were employed by them for the purpose of facilitating their business.

(c.) The constitutionality of the act is not decided.

March 10, 1885.

Practice in Supreme Court. Railroads. Corporations. Actions. Partnership. Torts. Laws. Before Judge CLARKE. Clay Superior Court. September Term, 1884.

Gunn brought his action of trespass on the case in Clay superior court, for a personal injury caused by the care-

less running of a boat on which he was a passenger, whereby the boat was wrecked and he was injured. The action was brought against the Central Railroad and Banking Company of Georgia, a corporation of said state, and Samuel J. Whitesides, of Muscogee county. The declaration alleged that they were partners under the name and style of the Central Line of Boats; that the railroad company was operating railroads in Muscogee and Clay counties; that the boats were run on the Chattahoochee river for the benefit of the railroads so operated, terminating at Columbus and Fort Gaines, in the counties named; that this was with the knowledge and consent of the president of the railroad company; and that it and Whitesides, as partners, were common carriers of passengers by such boats.

Defendants demurred to the declaration; and moved to dismiss it, on substantially the following grounds:

(1.) Because the Central Railroad had no power or authority, under its charter, to form any such partnership as alleged, and the acts alleged were *ultra vires*.

(2.) Because the acts alleged were not performed by the Central Railroad, as a railroad company, but as a steamboat owner, which was not within the powers conferred by its charter, and being a public corporation, the court will take judicial notice of its charter powers.

(3.) Because neither of the defendants was a citizen of Clay county, and the court had no jurisdiction there.

(4.) Because Whitesides, being joined in action in Clay county only by virtue of the suit against the Central Railroad there, if bad as to it, the case could not stand as to him.

The court sustained the motion, and dismissed the case; whereupon plaintiff excepted.

HENRY R. SHORTER; SMITH & RUSSELL, for plaintiff in error, cited 6 Heisk., 634; 100 U. S., 699; 2 Wait's Act. and Def., 337; Green's Brice's Ult. Vir., 467 (n), 265, 38

(n), 241 (n), 93; 61 Ala., 527; 69 *Ga.*, 114; 41 *Id.*, 673; 40 *Id.*, 135; 101 Mass., 58; 34 N. Y., 30; 3 Strobh., 263; 54 *Ga.*, 384; 48 *Id.*, 109 ; Thompson on Liability of Stockholders, 404, 405.

PEABODY & BRENNON, for defendants, cited ACTS 1855-6, p. 154; *Id.*, 1859, p. 48; *Id.*, 1869, p. 14; *Id.*, 1861, pp. 58, 59; *Id.*, 1862-3, p. 161; Code, §3407; 17 *Ga.*, 339; 30 *Id.*, 136; 52 *Id.*, 415; 54 *Id.*, 252; Code, §1679; 40 *Ga.*, 582, 618-624; 7 *Id.*, 224; 43 *Id.*, 57; 53 *Id.*, 625, 638; 63 *Id.*, 194; Boone Corp., 98, 99; 21 How. (U. S.), 441; 8 Gill & Johns., 272-320; 58 Ala., 241; 22 Conn., 502; 3 Vroom (N. J.), 328; 96 E. C. L., 121; 97 C. B., 290; 34 Am. R., 495 note; 76 N. Y., 506; 80 Ill., 419; 40 Barb., 274; 9 Heisk., 543; 40 N. H., 230; 50 Ind., 112; 1 Add. Torts, 27, 28; 2 *Id.*, 1304, 1305; Dill. Corp., 968; 1 Metc., 284; 2 Wait's Act. and Def., 331, 332, 334, 313, 337, 318, 344, 644; 1 *Id.*, 135; 4 *Id.*, 331-337, 344, 644; Green's Brice Ult. Vir., 240; 40 *Ga.*, 582; 69 *Id.*, 542; 17 Am. R., 653; 135 Mass., 197; 131 *Id.*, 258; 45 *Ga.*, 42; 65 *Id.*, 384-5; 100 U. S., 699.

HALL, Justice.

1, 2. The precise question made by this record is, whether the Central Railroad and Banking Company of Georgia, a public corporation, created by and existing under the laws of this state, can enter into a partnership with a natural person to purchase and run a steamboat on one of the rivers of the state, and whether it is liable to an action for a tort arising from a breach of duty, created by a contract made with the firm of which it is alleged to be member. We have been asked to decide how far such a corporation may engage in the business of purchasing and running boats on the rivers of the state, and how far they would be liable to passengers on their boats for injuries done in consequence of the negligence of their agents or employés engaged in conducting that particular business

but from the state of the pleadings in this case, the question thus broadly propounded is not raised, and we should be transcending our powers as a reviewing court were we to undertake to determine it, and must therefore decline to consider the request. When that question arises upon an actual case—not upon one that may come up at some future time—we will endeavor to meet and settle it, but until that time, it is obvious that we would be exceeding our powers were we to consider it. Any expression of opinion, under such circumstances, upon the abstract points would be clearly *obiter*, and would amount to nothing more than the views of the judge delivering the opinion; it would not have the force or effect of a judgment binding upon the court.

A corporation is an artificial person created by law for specific purposes, and its powers are limited and fixed by the act of incorporation. Code, §1670. Besides the powers thus specially granted, there are some others common to all corporations, among which is the power to purchase and hold such property, real or personal, as is necessary to the purposes of their organization, and the doing of all such acts as are essential to the legitimate execution of this purpose. *Id.*, §1679. This is the law of their being, and if they transcend its bounds, they are guilty of a misuser of their franchises, and thereby incur a forfeiture of the same. *Id.*, §1685.

In Whittendon Mills *vs.* Upton *et al.*, 10 Gray, 582, in which the question of the ability of corporations to form a partnership with individuals and the validity of contracts made by such an association was fully considered, the Supreme Court of Massachusetts says: " What powers are granted expressly, or by implication, because necessary or usual for the purposes which this charter was given to effect, the corporation has and no more.

" There is one obvious and important distinction between such a society as this charter creates and that of a partnership. An act of the corporation, done either by direct

vote or by agents authorized for the purpose, is the manifestation of the collected will of the society. No member of the corporation, as such, can bind the society. In a partnership each member binds the society as a principal. If, then, this corporation may enter into partnership with an individual, there would be two principals, the legal person and the natural person, each having, within the scope of the society's business, full authority to manage its concerns, including even the disposition of its property." *Id.*, 595. Again it is declared (*Id.*, 597) that " the effect of all our statutes, the settled policy of our legislation for the regulation of manufacturing corporations, is that the corporation is to manage its affairs separately and exclusively; certain powers to be exercised by the stockholders, and others by officers who are the servants of the corporation and act in its name and behalf. And the formation of a contract, or the entering into a relation by which the corporation or the officers of its appointment should be divested of that power, or by which its franchises should be vested in a partner with equal power to direct and control its business, is entirely inconsistent with that policy.

" The power to form a partnership is not only not among the powers granted expressly or by reasonable implication, but is wholly inconsistent with the scope and tenor of the powers expressly conferred, and the duties expressly imposed upon a corporation by the legislation of the commonwealth."

Farther it is said (*Id.*, 598) that "the case rests upon broader grounds. The charter of the corporation is part of the public law. Those who deal with it must take notice of the extent of its powers, and that the corporation is legally incapable of entering into the contract of partnership, that that contract was beyond the scope of its authority, and that this incapacity resulted from considerations not personal or peculiar to the corporation or its members, but from general grounds of public policy, which the corporation and those dealing with it cannot be per-

v74-33

mitted to contravene and defeat. That policy is to confine these corporations within the limits prescribed by law, to protect the stockholders from liabilities which the charter and laws do not create ; and while it imposes upon the stockholders of corporations heavy responsibilities, to retain to them the legal control of its business and conduct of its affairs." East Anglian Railway *vs.* Eastern Counties Railway, 11 C. B., 775 ; MacGregor *vs.* Official Manager Dover & Deal Rwy. *et al.*, 18 Ad. & El. N. R., 618 ; Shrewsbury & Birmingham Railway *vs.* Northwestern Railway, 6 H. L. Cases, 113, 137 ; 3 McLean, 102 ; 24 Barb., 199 ; 24 Conn., 159 ; 8 Giles & J., 248 ; 3 Woodb. & Minot, 112 ; Angell & Ames Corp., §§229, 239.

The Central Railroad & Banking Company has no express power, by the terms of its charter, to enter into a contract of partnership, nor is this among the powers (as we have seen) common to all corporations. Railroad companies derive their grant of corporate powers and privileges from an act of the general assembly, under the constitution of this state (Code, §5077), and all such legislative acts, published by authority, are to be held and taken as public laws. Code, §3815.

After this case was argued, it was suggested that the suit was maintainable under the act of 1880 and 1881, p. 165 (Code, §1689(o), as railroad companies are thereby authorized "to build, construct and run, as part of their corporate property, such number of steamboats or vessels as they may deem necessary to facilitate the business of such companies." But it is manifest from the very terms of this law, that they were to be the separate and exclusive owners of such boats or vessels as were employed by them for the purpose of facilitating their business. There is, therefore, no necessity, and indeed it would be improper, to consider or decide the constitutional questions made upon the portion of the act from which this section is taken, and upon that subject we intimate no opinion. We decide the single point that this corporation had no

power or authority to enter into the partnership set out in plaintiff's declaration, and that its acts and contracts pertaining to the business of such an association are invalid as against the firm and the corporation as a member thereof.

Judgment affirmed.