### ROBINSON *v.* DONEHOO *et al.*

1. As a general rule, one who attacks an instrument signed by himself, alleging that it does not contain or express what he intended it should contain, and believed it did contain, and that his signature to it was procured by the fraud of the other party, carries the burden of proving that these allegations are true.
2. Where in a given case it was a closely contested issue of fact as to whether or not on a particular occasion the plaintiff was able to read an instrument which he then signed after having made an addition to it in his own handwriting, an omission to charge a rule of law applicable to persons confessedly blind is certainly no cause for a new trial.
3. Where after a jury had been charged by the court and sent out to make up their verdict, two or three of them while separated from their fellows "remained in conversation with somebody

for about fifteen minutes," the legal presumption is that the losing party in the case was thereby injured, and in the absence of any explanation of the matter there should be a new trial.

February 7, 1896.

Complaint for land.    Before Judge Lumpkin.    DeKalb superior court.    February term, 1895.

*W. J. Albert*, for plaintiff.

*J. S. Candler* and *Candler & Thomson*, for defendants.

SIMMONS, Chief Justice.

Robinson sued Powell Donehoo and William Donehoo for certain land, claiming title thereto as an heir at law of his children, to whom the land had been devised by their grandfather.    The defendants set up various defenses, among them that Robinson had executed to them a relinquishment, as follows:

"Chamblee, June 27, 1893.    Received of M. B. Donehoo 14 and 69--100 in full of any and all claims against the estate of Abner Donehoo dec'd, and in consideration of said sum I hereby relinquish, surrender and renounce any claim to further administer on said estate or to any interest therein, and disclaim and renounce any right to, or title or interest in land lot number — in the 15th district of DeKalb county, bequeathed by said Abner Donehoo to his wife for life, and at her death to my deceased wife for life, and in fee to the children born to me and my said wife— my said wife and children having died before the first life-tenant.    Added for time $15.00.    R. M. Robinson."

Robinson contended that when he signed this paper he was not fully acquainted with its contents, that he thought he was signing a receipt for his commissions as administrator, but did not know that the paper contained a relinquishment of his interest in the land.    It appeared from the evidence at the trial, that he was not an illiterate man, but that when he signed the paper his lip or face was swollen and that he had a poultice on his face, and according to his own testimony there was a part of the writing that he could not make out exactly, and he handed it to William

Donehoo, one of the defendants, and requested him to read it to him. . William Donehoo denies that he read it to him at all. Before Robinson signed the paper he added to it in his own handwriting the words: "Added for time $15.00."

1–2. The trial judge charged, in substance, that one who attacks an instrument signed by himself, alleging that it does not express or contain what he intended it should contain and believed it did contain, and that his signature to it was procured by the fraud of the other party, carries the burden of proving that his allegations are true. This charge is assigned as error, and it is complained that the court erred in not charging that if the plaintiff, owing to the condition of his eyesight or for any other reason, could not read the paper, the burden was upon the defendants to show that its execution was free from fraud. There are authorities which hold that where the maker of an instrument is illiterate or blind, the burden of showing that it was read over to him and that he understood it is upon the person claiming rights under it; while others hold that where such a person is shown to have signed the paper, the presumption is that it was read over to him; but as far as we have been able to ascertain, the authorities are uniform in holding that where a person can read and write and has signed his name to an instrument, he is presumed to know its contents, and if he attacks the instrument for fraud and asserts that it does not contain the whole contract or contains more than the contract, the burden is upon him to show it. See Lawson, Presumptive Evidence, p. 18; 1 Bigelow, Fraud (ed. 1890), p. 376. And he must show clearly that he could not read it, before the burden will be shifted. Here the evidence is conflicting as to whether the defendant was able to read the instrument or not on the occasion in question; there is evidence strongly tending to show that he was able to do so, and a significant fact is that he made an addition to it in his own handwriting. In view of this evidence it is certainly

no cause for a new trial that the court failed to give in charge a rule of law applicable to persons confessedly blind or illiterate.

3. The motion for a new trial alleges misconduct on the part of jurors at various times after the case had been submitted to them. The alleged misconduct was explained by members of the jury, the sheriff and others, except as to one occasion. It appears from the motion and from the affidavit of W. W. Jossey, Jr., introduced in support of the motion, that after the jury had been charged by the court and had been sent out to make up their verdict, they were taken to a certain hotel for the night, and about eleven o'clock that night all of them except two or three went down the back steps of the hotel and into the lot about fifty yards from the hotel, and that those who did not go remained in conversation with somebody for about fifteen minutes, but who it was the deponent did not know, and he could not hear what they said. The affidavit of this witness was not contradicted by any of the jury or by the officer in charge of them, but was unexplained. So far as we know or the trial judge knew, the person conversing with the jurors on the steps may have been one of the parties in whose favor the verdict was rendered, or some person talking to them in the interest of those parties, and it was incumbent on the latter to explain this conduct to the satisfaction of the trial judge. This they might have done by affidavits from all the jurors and the officer in charge of them. It is singular that while all of the other alleged instances of misconduct are explained, no attempt is made to explain this particular one. The conduct of jurors on the trial of a case should be above suspicion, and in order to maintain the purity of trial by jury, whenever such misconduct as this is alleged and proved, a new trial follows as a matter of course. Upon this ground alone a new trial is awarded.          *Judgment reversed.*