## GORE *v.* MALSBY & COMPANY.

1. An answer denying liability on a written contract upon which the action was brought, on the ground that the defendant, because of illiteracy and consequent inability to read, was induced to sign the instrument by the false and fraudulent representations of the plaintiff's agent respecting its contents, of which he was ignorant, and to thus apparently make a contract entirely different from that into which he believed he was entering, and with a person he did not intend to contract with at all, and setting up what the real contract

was, is not demurrable as seeking to add to or vary the terms of a valid written instrument.

2. Damages in the nature of expenses necessarily incurred because of the breach of a contract, and traceable solely to such breach, may be pleaded in defense to an action on the contract.

3. So too may profits capable of exact computation, if the loss of the same is directly due to the breach of the contract, and if the damages resulting from such loss are such as must have been within the contemplation of the parties when entering into the contract.

4. The court erred in striking certain portions of the defendant's answer, as the same set up valid matters of defense.

Argued May 18, — Decided June 4, 1900.

Complaint. Before Judge Sheffield. Randolph superior court. November term, 1899.

*William D. Kiddoo,* for plaintiff in error.
*Arthur Hood,* contra.

LEWIS, J.    Malsby & Company brought suit against A. F. Gore, in Randolph superior court, upon a promissory note dated February 14, 1898, due December 15, 1898, for $600.00, with interest at 8% per annum from maturity, and 10% attorney's fees, payable to plaintiffs, and given " for balance or difference due on one forty-horse Erie City Iron Works engine, one No. 9 forty-five-horse return tubular Erie City Iron Works boiler," a copy of which note was attached to plaintiffs' petition.    To this petition the defendant filed the following answer:

" 1st.  He admits he is a resident of Randolph county.

" 2nd.  He denies that he is indebted to the petitioner in the sum of $600.00, besides interest at 8% from maturity, and 10% on amount due as attorney's fees; but he admits that he signed, with his mark, the note described in plaintiff's petition; but he says that said note does not set forth the true contract made at the time the same was signed.

" 3rd.  He says, that the signature to said note was secured by fraud, and that the fraud was perpetrated upon him in this way: He is illiterate, unable to read or write, and ignorant, and did not know, until long after said note was signed, that the same was made payable to Malsby & Co., nor did he make with said Malsby & Co., that he knew and believed at the time, any contract whatever as to the articles described in the

note sued on, or as to any other thing; nor did he know that the said note failed to set forth the true contract made by him with the person hereinafter named, but on the contrary, by false and fraudulent representations of the said party that the same contained the contract, was induced to sign the same, believing at the time that he was signing a note payable to the Northington-Munger-Pratt Co. Before and at the time said note was signed, one P. H. Baker came to his residence in Randolph County, Georgia, and where at the time he owned and was running a public gin, and represented himself as the agent of the said Northington-Munger-Pratt Co., and proposed to sell to him what is known as the Munger System of Ginning, furnish all the necessary machinery, including the boiler and engine named in the note sued on, and all necessary attachments and fittings, and to put up the same in good running order, and to take in part pay therefor defendant's old engine, boiler, and some other old machinery, and for which he was to pay the sum of twenty-five hundred dollars additional, in several payments, and the whole of the machinery was to be shipped to Weston, Ga., by the first day of June, 1898, this defendant to pay the freight on said machinery, and to haul the same from Weston, Ga., to his home place; and this defendant and the said P. H. Baker, representing himself as the agent of the aforesaid Northington-Munger-Pratt Co., did enter into a contract thereto in the terms proposed, and the said P. H. Baker prepared and drafted all the papers in reference thereto, including the note sued on; and falsely represented to this defendant that the said papers so drawn, including the note sued on, embodied the contract as hereinbefore set forth, and, knowing that the defendant could not read or write, fraudulently took advantage of his ignorance, and failed to put in the said note the terms of said contract, and the same, by said fraud, does not contain all of the said contract, nor show all of the consideration therefor, nor the obligation that the said Baker, as agent, entered into with reference to the matter; and especially as to the said engine and boiler, the obligations to ship them to defendant by the first day of June, 1898, with all necessary attachments for both engine and boiler, and to put up the same and connect it with other

machinery of the said Munger System, and to furnish a machinist to run the same until it was fully proved that the whole was in good running order, and also put in the said note name of plaintiff as payee instead of the said Northington-Munger-Pratt Co. The defendant never knew of these fraudulent acts perpetrated on him by the plaintiffs until the Northington-Munger-Pratt Co. had sent a machinist to put up the ginning machinery, and he had almost completed that part of the work, and defendant called his attention to the fact that he would have to put up the engine and boiler, and make all the necessary attachments to the machinery, when he declined to do so, saying that it was not part of his company's contract, and then for the first time he was led to suspect that a fraud had been committed by the said P. H. Baker, and examined the papers left with him by the said P. H. Baker, and he ascertained that the engine and boiler, 'with all attachments,' was ordered from the plaintiffs. And he alleges that although the said plaintiffs shipped not from Atlanta, whence defendant was to pay freight, but from Erie, Pa., the said engine and boiler, they did so to Richland, Ga., and not to Weston, Ga., and also shipped another engine and boiler to defendant, in the same car, that was intended for one W. O. Barbse, and before the railway company would deliver the machinery to him it required him to pay the extra freight from Richland to Weston on all the car contained, and in consequence of said wrongful shipment he paid out in freight the sum of twenty-seven dollars and seventy cents more than he would have had to pay had the same been first shipped to him at Weston, Ga., and he was required to pay freight from Erie, Pa., and not from Atlanta, Ga., and he alleges that this was more than he ought to have paid, the amount not yet ascertained, and he asks that he may hereafter insert the same. The plaintiffs having failed to send him the necessary attachments agreed to be furnished, he was compelled, as the ginning season was approaching, to buy at Columbus and Dawson, Ga., the same at an expense of fifty-seven dollars and forty-one cents for the same, and expenses going and sending therefor [a full statement of which is annexed as an exhibit to this answer]. The plaintiffs having failed to send any machinist to put up said

boiler and engine, and make the attachments to the other machinery aforesaid and delay in attempting to get the one suggested by the said P. H. Baker, the defendant hired another, and proceeded to have the said engine and boiler put in place and all attachments made, and the same put to work at an expense of ninety dollars and sixty cents [a full statement of which is also annexed as an exhibit to this answer]; and, in consequence of the said fraud committed by the plaintiffs through their agent, said plaintiffs should not recover against him any sum whatever on said note, the same being void on account of the fraud before alleged; and because of the said fraud, and the failure of the plaintiffs to carry out the obligations of the true contract entered into, the consideration of the said contract has failed in part, to the amount of one hundred and seventy-five dollars and seventy-one cents, and the extra freight paid hereafter to be ascertained, and said amount ought to be deducted from the amount agreed to be paid under the true contract.

"4th. For further answer the defendant says, that the plaintiffs are indebted to him in the sum of one hundred and seventy-five dollars and seventy-one cents, for attachments, fittings, work and labor in and about the putting up the engine and boiler named in the note sued on, and extra freight and expenses paid on account of the failure of plaintiffs to carry out their obligations under the true contract as set forth in paragraph 3 of this answer [full particulars of which are set forth in the exhibits], and he prays that the amount may be set off against the plaintiffs' claim.

"5th. Further answering the defendant says, that for the reasons that the plaintiffs did not comply with the cross-obligations and independent covenants arising under the contract made as to the matters in their petition alleged, and set forth in paragraph 3 of this answer, and the great delay occasioned thereby, by which the defendant was unable to commence ginning for the public at the beginning of the cotton season, August 1, 1898, and not until the 7th day of September, 1898, which he would have been able to do had plaintiffs complied with their obligations under the contract, plaintiffs have injured and

damaged this defendant in the sum of two hundred dollars over and above amount claimed as set-off, etc., and defendant prays that said amount of two hundred dollars may be deducted from plaintiffs' claim, by way of recoupment."

To this answer the defendant filed an amendment alleging that, before he could get possession of the engine, boiler, fixtures, etc., he was required to pay the freight from Erie, Pa., to Richland, Ga., and then local freight from Richland to Weston, Ga., while the true contract between the parties required that said freight should either be shipped from Atlanta, Ga., or from Birmingham, Ala., and that the amount he paid for freight was much larger than under the contract he ought to have been required to pay, by the sum of eighty-five dollars and        cents, and plaintiffs damaged him to said amount by improper shipment of the goods.    Defendant asked that this amount be deducted from the true amount due by him to plaintiffs.    Defendant further amended his plea by adding to the third paragraph thereof the following:  " The note described therein nor the contemporaneous order and papers also described therein were never, before the signing of said notes or said contemporaneous papers, read over to him by the said P. H. Baker, nor by any one else, except the order to Northington-Munger-Pratt Co., which was read, and upon objection of defendant that it did not contain former statement that the company was to pay wages of man to put up machinery, he represented that he had stricken that out, nor were any of the same read over to him until long afterwards, and after the Munger System was being put up at his place."    Also, by adding to the fifth paragraph the following:  " Had the said engine, boiler, etc., been delivered at the time agreed upon, he would have been able to gin two hundred bales of cotton more than he did from the opening of the cotton season until he was able to do so, and would have received therefor one dollar per bale; that he did gin in the cotton season the year before 175 bales of cotton and received therefor $175.00 during the same time, with an inferior outfit, and in the year 1899, during the same time, 201 bales of cotton at one dollar per bale, and he would have ginned the same number in 1898, if the machinery had arrived as agreed to be delivered."

To this plea and the amendments thereto the plaintiffs demurred upon the following grounds: " 1st. That matters of defense set up in said plea seek to add to and vary the written contract sued on in this case. 2nd. Because the allegations of fraud as set out in par. 3 of defendant's plea are too vague and uncertain, and do not allege that the contract sued on was not read over to him, and because the matters and things therein set out seek to contradict and vary the contract sued on. 3rd. Because the matters of defense set up in paragraph 5th of defendant's plea, setting up damages, are too remote and consequential, and not set forth with sufficient particularity to put plaintiffs upon notice of what particular damages were claimed, or how and in what manner defendant was damaged." After argument upon this demurrer the court sustained the same, striking all of the answer and amendments, except the first and second paragraphs thereof. A jury was empaneled to try the case, and, after the introduction in evidence by plaintiffs of the note sued on, the trial judge directed a verdict in their favor for principal, interest, and attorney's fees sued for; and judgment was accordingly entered. To the order striking the defendant's answer as amended, except the paragraphs thereof above mentioned, and to the direction of the verdict in plaintiff's favor, the defendant excepts, and assigns the same as error.

1. The judgment of the court below in sustaining the demurrer to the answer of the defendant was doubtless based mainly, if not entirely, upon the idea that the defendant was seeking to vary the terms of an express written contract by parol evidence. We think this view is founded upon an entire misconception of the defense sought to be established by this answer. It does not seek to vary the terms of a contract that the answer alleges was really entered into between the parties. It attacks the written instrument sued upon, as having been fraudulently procured by misrepresentation of its contents. In the first place, it is claimed by the defendant that he had never made any contract with the plaintiff, or with any one who pretended to be acting as the plaintiff's agent in this case; that he thought he was giving the note payable to the Northington-Munger-Pratt Co.; that he did not know Malsby & Co. at all in the transaction; and that

Baker represented himself as the agent of the Northington-Munger-Pratt Co. In short, the answer clearly indicates that there was no intention of the maker of this note to enter into any sort of a contract with Malsby & Co., or their agent. It further appears from the answer that material stipulations were agreed upon between this agent and the maker of the note, which were represented by the agent to have been embodied in the note, and which induced his signature to the same. The defendant was illiterate; could neither read nor write; and avers the note was never read over to him before he signed it. We think the allegations make out a clear case of the procurement of the note by such fraud as would render it absolutely void in law; and, instead of seeking to vary a written contract by parol evidence, he is simply endeavoring to show what the real contract was, and that his signature to what purports to be the written contract was obtained by the fraudulent misrepresentations of the party with whom he was dealing. The facts in the present case bear no analogy to the decisions relied upon by counsel for the defendant in error. For instance, in the case of *Boynton* v. *McDaniel,* 97 *Ga.* 400, it was decided: "It is no defense to an action upon a promissory note that the maker, relying on certain representations made by another at the time of its execution, signed the note without reading it, and that it did not contain or express the contract as actually made, the note not having been signed under any emergency, there being nothing to prevent the maker from reading it, and no sufficient excuse for failing to do so being alleged." It has repeatedly been decided that when one through his own negligence fails to inform himself about the contents of a written contract, he will not be allowed to vary it by parol evidence. But the difference is very marked between that class of cases and where one, from illiteracy or ignorance, is unable to read the writing he is induced to sign, and has to rely upon the representations made by the draftsman. In *Robinson* v. *Donehoo,* 97 *Ga.* 704, it is recognized that there are authorities which hold "that where the maker of an instrument is illiterate or blind, the burden of showing that it was read over to him and that he understood it is upon the person claiming rights under it; while others hold that where such a person is

shown to have signed the paper, the presumption is that it was read over to him." In adjudicating this case it is not necessary to determine the better weight of authority upon this point, for, as above indicated, it appears that the note was never read to the plaintiff in error. In *Carbine* v. *McCoy*, 85 *Ga.* 185, it was decided: "If a husband and wife agreed that he should make to her a deed conveying an estate in the property as long as they should reside in a certain place, and she fraudulently instructed the scrivener to so draw the deed as to convey the title absolutely to her and her children, reserving to the husband only a life-estate, and he was illiterate and deaf and relied on his wife's fidelity, equity will afford him relief." And it was further decided in that case that the court below was not authorized to decide, as a matter of law, that the plaintiff was not entitled to relief because of gross carelessness in not knowing and understanding the terms of the deed before he signed it. See also, in this connection, *Hansford* v. *Freeman*, 99 *Ga.* 376; *Chapman* v. *Atlanta Guano Co.*, 91 *Ga.* 821, where a note was written out for more than the agreement, and was signed by the maker when so dark that he could not see well, but on the representation of the payee. It was held that this constituted a good defense to the note. Certainly it would be equally as good a defense when the maker could not read what he was signing, and relied upon the representations of the draftsman. Numerous other authorities might be cited to sustain the ruling herein announced. In fact we know of no other adjudication of this or any other court of last resort at all in conflict with our decision in this case. The point made in the second ground of the demurrer, that the answer did not allege the contract sued on was not read over to him, was cured by the amendment to the plea; and the ground in the demurrer that the allegations of fraud in defendant's plea were too vague and uncertain was without merit, for we think that the fraudulent conduct of the party with whom this defendant was dealing was specifically and definitely set out.

2. The answer also claims damages in the nature of expenses necessarily incurred because of the breach of the contract which it alleges was actually made between the parties. Attached to the answer in the record is an itemized statement of these ex-

penses. It will be observed that there is no special demurrer filed to this portion of the answer. The answer on the subject of damages might be considered as a plea in conflict with that portion thereof which attacks the contract sued upon on the ground of fraud. If the defense based upon the alleged fraudulent procurement of the note should be sustained by proof, then we think it would necessarily follow that there could be no recovery on the note, and that would be an end to this litigation; for we do not see how the defendant would be entitled to recoup damages growing out of a contract not sued upon in the case. If, however, the jury should find the contract was with Malsby & Co., then they could adjust the equities between the real contracting parties.

3. The only remaining ground in the demurrer is that "the matters of defense set up in paragraph 5th of defendant's plea, setting up damages, are too remote and consequential, and not set forth with sufficient particularity to put plaintiffs upon notice of what particular damages were claimed, or how and in what manner defendant was damaged." We think the amendment allowed to that paragraph of the plea fully meets all the objections set forth in this ground of the demurrer. This amendment specifically sets forth how the damages were sustained in consequence of the defendant being delayed in commencing his ginning operations. The length of this delay was specified, and the amount of cotton that he was thus deprived of ginning for the public was specifically set forth. When the parties entered into a contract for the purchase of this machinery, defendant was then engaged in the business of ginning for the public, and had been for years previous. It was clearly contemplated that he desired this new machinery for the purpose of engaging in this business, which was to start at the time designated in his answer, and delay in furnishing and properly fitting up the machinery for service during the ginning season would necessarily result in loss to him, which must have been in contemplation of the parties at the time their contract was made. We do not think the provisions of the Civil Code, § 3798, which declares that remote or consequential damages are not allowed whenever they can not be traced solely to the breach of the con-

tract, or unless they are capable of exact computation, apply to the facts set up in the answer in the present case. In *Parker* v. *Forehand,* 99 *Ga.* 745, in commenting upon that section (Code of 1882, § 2944), Justice Lumpkin said: " Such a rule is surely not to be held applicable to a case where it appears that the contract is of such a nature that it must, of necessity, be known to the party deliberately and 'wrongfully violating his obligations that a breach of the same will inevitably result in the very kind of damages to the other party of which the declaration complains. In such a case, the inference is warranted that the damages in question, though to some extent remote and difficult of exact computation, must have been within the contemplation of both parties when entering into the contract; and where these damages are substantial in the essential ingredient of actual injury, they justly call for compensation." See also *Walden* v. *W. U. Tel. Co.,* 105 *Ga.* 275-8, where it was held: " In an action against a telegraph company, claiming damages for failure to transmit a message containing an order for goods which had, before the delivery of the message to the telegraph company, been sold by the sender, the profits lost by the failure to receive the goods are not too remote to be the subject of recovery." See also *Van Winkle* v. *Wilkins,* 81 *Ga.* 93; *Stewart* v. *Lanier House Co.,* 75 *Ga.* 582, where loss of profits of a hotel-keeper occasioned by failure of his lessor to make necessary repairs of leased premises were held to be recoverable.

4. From the above recital of facts it will be seen that the court sustained the demurrer as to all the portions of the defendant's answer embodied in the foregoing opinion, and practically deprived him of any defense whatever to the action upon the note. For the reasons above given, we think these portions thus stricken contained valid matters of defense, and that the court erred in sustaining the demurrer to the same, and in directing a verdict for the plaintiff.

*Judgment reversed. All concurring, except Fish, J., absent.*