## SUPLE *v.* THE STATE.

1. An excerpt from a charge should be considered in its relation to its context; and where the context removes all probability of an erroneous impression which might be created by the excerpt as an isolated fragment, a new trial will not be granted.
2. The charge on the subject of the prisoner's statement was not erroneous.
3. Where a jury in the custody of a bailiff were carried from dinner to the court-house, and on their way one of the jurors had a brief conversation with a customer and an employee of his business about a financial matter, and where it appears that the juror neither discussed nor heard discussed the case on trial or anything relating thereto, such an irregularity will not require the grant of a new trial.

Argued November 15,—Decided December 22, 1909.

Indictment for murder.    Before Judge Parker.    Jeff Davis superior court.    September 7, 1909.

*H. A. King, E. S. Chastain, S. D. Dell,* and *Wilson, Bennett & Lambdin,* for plaintiff in error.    *John C. Hart, attorney-general,* and *J. H. Thomas, solicitor-general,* contra.

Evans, P. J.    John Suple was tried and convicted, at the February term, 1909, of Jeff Davis superior court, of the murder of Simon Lee, and was sentenced to be hanged.    His motion for a new trial was overruled, and he excepted.    It appears from the evidence, that at the time of the shooting the deceased had gone to the house of one of the witnesses, and was followed by the defendant; that there they had some words, when the deceased was struck in the face by the defendant with a pistol; that the deceased then sat on the edge of a bed, with his hands over his face; that in this position he was shot by the defendant; that the shooting was preceded by threats; and but for the importunities of others the defendant would have again shot the deceased while lying prostrate upon the floor.    The defendant, in his statement, claimed that he had been

drinking and gambling, and did not know anything of the killing until told; he denied the killing.

1. The judge prefaced his charge to the jury with the following introductory language: "You are charged with a grave responsibility, that of passing upon the question involved in this case; because it is a matter of vital importance to this accused. With him it is a question of life or death or imprisonment in the penitentiary for life." Exception is taken to this charge, because it tended to convey to the jury the idea that, in the opinion of the judge, the accused should either be hung or imprisoned in the penitentiary for life. This fragment from the charge, standing isolated and alone, might be open to criticism, but when taken in connection with its context it was not calculated to produce the impression contended for by counsel for the plaintiff in error; for, almost in the next breath, the court impressed the jury that the laws of the State were just as truly vindicated by the acquittal of the innocent as the conviction of the guilty, and that the jury were empaneled for the purpose of ascertaining the truth of the case, and to say whether or not the defendant was guilty of the charge made by the State. The court also instructed them that the defendant should be fully acquitted and discharged of the crime with which he stood charged, unless his guilt should be shown to a moral and reasonable certainty and beyond a reasonable doubt. See *Vanderford* v. *State,* 126 *Ga.* 753 (55 S. E. 1025).

2. In his instruction upon the effect to be given the statement of the defendant, the court said: "The defendant in all criminal cases has a right to make to the court and jury such statement as he may see fit in his own defense. That statement is not under oath, and the jury may give to it such weight as they may see fit. They may believe it in preference to the sworn testimony in the case, or disregard it entirely." The error alleged is that this instruction excluded from the jury the privilege of believing the defendant's statement in part and rejecting it in part. We do not think this criticism is justified. Penal Code, §1010.

3. The main ground upon which counsel for plaintiff in error in their argument ask for a new trial is because of the alleged misconduct of the jury while empaneled to try the accused. In his motion for new trial the defendant exhibited the affidavit of the bailiff in charge of the jury, to the effect that as the jury in his

custody were taken from the place where dinner had been served, to the court-house, one of the jurors separated himself from the jury and mingled with the crowd, and engaged in conversation with people other than the jury and the bailiff, and out of the hearing of the bailiff. The bailiff was not able to give the names of the people to whom it was alleged the juror talked. On the hearing of the motion the court allowed the State to make a counter-showing. One affidavit introduced by the State was by the juror who was alleged to have separated himself from the bailiff and the other members of the jury. This juror testified, that he was the president of a bank at the county seat, and that while passing the bank, on the return of the jury from dinner, the jury made a halt in front of the bank, and he there spoke to the assistant cashier about telephoning for some money for the bank; that in this conversation only a word or two was spoken, and no reference was made to the case which was being submitted to the jury; that the conversation took place in the presence of the jury and the bailiff; that as the jury proceeded to the court-house they passed the tax-collector, who asked him about the county's funds deposited in his bank, to which the juror gave reply; that at no time was he separated exceeding six or eight yards from the jury; and that he did not speak to any one about the Suple case, nor did any one speak to him, or in his hearing, about the same. The tax-collector made affidavit to the effect that as he happened to pass this juror, not knowing that he was empaneled on the case, he spoke to him about certain money, in which he as tax-collector, and the juror as president of the Citizens Bank, were interested; that the conversation was brief, and confined to the business transaction mentioned. This court has differentiated between misconduct of a jury and a harmless irregularity growing out of a slight departure from the strictest requirement of the law relating to the keeping together of juries until a verdict is announced. Said the court in *Shaw* v. *State*, 83 *Ga.* 92 (9 S. E. 768) : "There are many things which can be done by individual members of the jury, or by the whole jury, which are susceptible of such clear explanation that the trial judge would be authorized in refusing to set the verdict aside." We are clear that this case comes within the operation of the rule above quoted. The plaintiff in error's sole contention is that the juror separated himself from his fellows, and conversed with others, whose names he was not able to give. The

counter-showing made by the State furnishes the names of the two persons with whom the juror had a brief conversation. From proof submitted it was not so much a separation as a slight lagging behind of one of the jurors while being carried from dinner to the court-house. Both of these conversations were confined to financial matters, and did not relate to the case on trial. It is as clear as it is possible to make it that the juror's conversation with outsiders could not possibly have influenced his conduct as an upright, impartial juror. While it is true that prejudice to the accused is to be presumed from the dispersal of the jury, yet this presumption is entirely overcome and rebutted when it is demonstrated by indubitable proof that no harm resulted. The facts of the cases where new trials have been granted on account of the misconduct of a jury are altogether unlike the present case. In the *Shaw* case, supra, the bailiff carried the jury to a church where revival services were in progress. The jury were escorted to specially assigned seats by the prosecutor, who conducted the meeting. The religious excitement was considerable, and prayers were offered for the court and its officers. The court said that "The jury, seeing this going on, and seeing this prosecutor filled with religious zeal and fervor, may have reasoned in their minds, and doubtless did, that this man, who was the active prosecutor of the defendant, who assisted in the selection of themselves as jurors in the case, and who testified before them as a witness, by his conduct and declarations at the prayer-meeting showed that he was a good and upright man, and that such a man would not prosecute the defendant unless he believed him to be guilty." In *Obear* v. *Gray*, 68 *Ga.* 182, the jury were taken to a park, a place of great public resort, on the Sabbath day; and inasmuch as the jurors did not depose that they did not hear bystanders make remarks about the case, it was held that the purgation was not complete. In *Robinson* v. *Donehoo*, 97 *Ga.* 702 (25 S. E. 491), it was shown that two or three of the jurors separated themselves from their fellows and remained in conversation with sombody for about fifteen minutes. This was not denied by any of the jury, or by the officer in charge of them. It was held that the purgation was incomplete. In *Smith* v. *State*, 122 *Ga.* 154 (50 S. E. 62), it was shown by affidavits that upon the adjournment of court the jury and others were left in the court-room, where they engaged in playing the violin and organ, and in dancing. On the

next morning the bailiff had a conversation with a member of the jury concerning the case; and after the evidence was closed, the jury, in company with the bailiff, went out to the woods, and engaged in an experiment, to determine whether certain evidence was true. In the counter-showing the State did not exhibit the affidavits of all of the jurors, as to whether the case was discussed by the bystanders in the court-house during the musical festivities; it was not denied that the bailiff and a member of the jury discussed the case; nor was it denied that the jury engaged in an experiment, having for its purpose to prove the correctness of the testimony of a witness who had testified in the case with reference to the distance he could recognize a knife. Under these circumstances the court held that the misconduct of the jury was more than an irregularity. In all of these cases it appeared that .the occurrences were such as to directly affect the case under consideration, and that the counter-showing was incomplete and failed to purge them of their harmful effect. It would be a reproach to the administration of the law to grant a new trial for so slight an irregularity as is complained of in this case, and which is so conclusively shown to have had no effect upon the jury in determining the question of the defendant's guilt or innocence.

*Judgment affirmed. All the Justices concur.*