## 4526. McINTOSH *v.* PATTON.

HILL, C. J. 1. The city court of Monroe has jurisdiction to try at the quarterly session of the court all civil cases of whatever nature where the amount claimed or involved, inclusive of interest, is as much as fifty dollars, except where, under the constitution, exclusive jurisdiction is given to the superior court. Acts 1905, p. 303. By an amendment to the act referred to, the city court is given jurisdiction to try and dispose of all civil cases at its monthly sessions where the principal sum claimed in the suit does not exceed $200, provided no jury is demanded. Acts 1906, p. 270. Under the act as amended, a civil suit involving a principal sum of less than $200, where no jury was demanded, was properly triable before the judge and jury at a quarterly session of the court.

2. On the trial of an action upon a contract, the making of which was denied by the defendant, an offer by him to "call off the trade" under the contract, the offer not being made pending any negotiations for compromise, was admissible as a circumstance tending to show that the defendant had made the contract. *Hatcher* v. *Brown*, 74 *Ga.* 841; *Cooper* v. *Jones*, 79 *Ga.* 379 (4 S. E. 916).

20

3. The damages claimed for breach of the contract were not remote, contingent, or speculative, but were clearly proved as the direct result of the breach. The verdict for the plaintiff was fully supported by the evidence, and no error of law appears to have been committed on the trial.                    *Judgment affirmed. Russell, J., disqualified.*

DECIDED FEBRUARY 4, 1913.

Action on contract; from city court of Monroe—Judge Stone. October 16, 1912.

The action was for damages in the sum of $100, on account of the breach of a contract for the rent of land. The trial resulted in a verdict against the defendant for $39. He excepted to the refusal of a new trial.

The petition as amended alleged, that McIntosh, the defendant, contracted orally with the plaintiff in September, 1910, to rent to him certain land to be farmed by him for standing rent for the year 1911, but when he went to McIntosh, about the end of the year 1910, and demanded possession of the land for this purpose, McIntosh refused to give possession; that it was then too late to obtain as good land as he had contracted for, and he had to move from the place at which he was living to another place, until he could find a home elsewhere, and had to pay $10 for moving twice; that it was the last of January, 1911, before he could find a home and move in and begin farm operations for the year, and, on account of this delay in getting ready to put in his crop, he suffered a loss of $75, by reason of the fact that a large part of the land that he rented for the year 1911 had to "lay out" and he could not cultivate it, and he had to pay standing rent for it without remuneration. The defendant in his answer denied that a contract had been completed between the plaintiff and himself. At the trial the plaintiff testified to the contract and its breach as alleged, and that when the defendant refused to allow him to take possession of the land, he had no place to move to, and was forced to rent a house from one Broach for some time; that Broach did not charge him rent; that he then rented other land and had to move to it, and the cost of moving both times was $7; that the land he rented for 1911 was not as good and productive as the land he had rented from McIntosh; that he was unable to get as good land for that year as the McIntosh land; he could have made, he thought, two more bales of cotton on the McIntosh land than on the place to which he went; the difference in value of the cotton that he would

have made was $100, and he considered that he was damaged in that amount; on account of lateness in getting moved, he had to let five or six acres of land "lay out." The plaintiff and another witness testified that the reason assigned by McIntosh for refusing to allow him to take possession of the land in question was that McIntosh's father did not want him to move. The defendant testified that the reason for his refusal to let the plaintiff have possession of the land was that the plaintiff refused to sign a contract, which he had agreed to sign, reserving to the defendant the right to gather and sell the cabbage plants then growing on the place. The plaintiff denied that he had agreed to sign such a contract, or had refused to do so. It was testified, in behalf of the defendant, that the place to which the plaintiff moved was worth as much as the McIntosh place, and that land as good as the McIntosh land was offered to the plaintiff. The plaintiff's counsel, on cross-examination, asked the defendant if he did not send his brother-in-law to the plaintiff and offer to him $25 to "call off the trade and have nothing more to do with it." In answer to this question the defendant testified that he sent his brother-in-law to make the offer, after the plaintiff had said he was going to move in there next morning; thinking that it would be better than for the plaintiff to move in there, and have trouble perhaps with him when he moved, the defendant's family being sick at the time. Another witness testified that he "heard the conversation of Patton and McIntosh's brother-in-law about settling the case for $25." The introduction of testimony as to the offer of $25 to the plaintiff was objected to by the defendant, on the ground that it was irrelevant and "in the nature of a compromise or settlement." The court overruled the objection, counsel for the plaintiff having stated that this testimony was offered merely as a circumstance to show that a contract had been made as contended by the plaintiff. And on this subject the court charged the jury as follows: "If you believe, from the evidence in this case, that the offer of McIntosh was made in an effort to compromise, you can not consider such evidence at all; but, on the other hand, if you do not think it was made for the purpose or in an effort to compromise, then you may consider the same as a circumstance, in connection with all the other evidence in the case, in determining whether or not a contract was made between the parties to this case."

In the motion for a new trial it is alleged that the verdict was contrary to law and the evidence, and that the court erred in allowing the introduction of the testimony as to the defendant's offer of $25 to the plaintiff, and erred in the charge to the jury on that subject. The motion contained also the following grounds: (2) "The court should grant a new trial in the case for the reason that the suit is brought in said case to the quarterly term of the city court of Monroe, and is for the sum of $100 damages, and the quarterly term of said city court does not have jurisdiction of any sum except it be over $200; and. therefore the court is without jurisdiction in said case, and the verdict and judgment is contrary to law and without law to support it." (4) "The court erred in admitting the evidence of R. C. Patton [the plaintiff] that he thought he could have made two bales worth $100 more, on the McIntosh place than where he afterwards rented, because it was so late before he got another place; the objection being that it was too remote and speculative to be the basis of damages in the case." It does not appear that any question was raised as to jurisdiction, except in the motion for a new trial. .

*W. O. Dean,* for plaintiff in error, cited: *Kelly* v. *Strouse,* 116 *Ga.* 875 (11-14), 899; *Teasley* v. *Bradley,* 110 *Ga.* 498 (6), 506; *Austin* v. *Long,* 5 *Ga. App.* 551; *Scales* v. *Shackelford,* 64 *Ga.* 172 (2); Acts 1906, p. 270.

*Lewis C. Russell,* contra, cited: *Hatcher* v. *Bowen,* 74 *Ga.* 841; *Cooper* v. *Jones,* 79 *Ga.* 379; *Central Railroad* v. *Papot,* 59 *Ga.* 343 (5); Acts 1905, p. 303; Acts 1906, p. 270; Civil Code (1910), § 5664; *M. & B. R. Co.* v. *Gibson,* 85 *Ga.* 1 (8); *King* v. *Phillips,* 70 *Ga.* 409 (2), 411; *Smith* v. *Rawson,* 61 *Ga.* 208 (1); Civil Code (1910), §§ 4398, 3589.