### 6981.   Scott *v.* Central of Georgia Railway Co.

BROYLES, J.   The court erred in disallowing the proffered amendment to the plaintiff's petition, and in sustaining the general and special demurrers and dismissing the petition.

(a)   With the addition of the disallowed amendment, the petition set forth a cause of action, and was not subject to general demurrer.

(b)   The special demurrers should not have been sustained, as they did not specify or point out the alleged defects in the petition.   A special demurrer goes to the structure merely, and it must distinctly and particularly specify wherein the defect lies.   The party specially demurring·"must lay, as it were, his finger on the very point," otherwise his demurrer will be overruled.   *Martin* v. *Bartow Iron Works,* 35 *Ga.* 319, 323.                                                   *Judgment reversed.*

DECIDED MAY 24, 1916.

Action for damages; from city court of Millen—Judge T. L. Hill.   August 30, 1915.

The petition alleges, in brief, that the plaintiff is a widow and was the mother of James Rufus Jackson, who, on September 30, 1914, was killed by a railroad-train of the defendant.   The deceased was a farm-hand, seventeen years of age, with an earning capacity of $240 per annum.   At the time of his death he was on the defendant's right of way in the town of Millen, having gone there for the purpose of attending a minstrel show, which the defendant had allowed to place a tent on the right of way and about nine feet south of a public-street crossing.   The deceased, by reason of being thrown with an unusual crowd was compelled to seek fresh air, and consequently left the tent and walked over to the railroad, where he seated himself on the end of a cross-tie.   He was subject at time to attacks of vertigo, brought on by excitement or any unusual occurrence whereby he was thrown with a large crowd and unable to get a supply of fresh air.   "When deceased reached said point at said street-crossing [about nine o'clock at night] a passenger-train of defendant, coming from Macon and known as the 'Shoo-fly,' and which backs in around the Y at Millen,

going in the direction of the depot of Millen and running at a dangerous rate of speed, without any light except two small danger signals commonly attached to the rear of all trains, suddenly and without warning ran upon deceased, striking him, knocking him down, and killing him. Deceased was struck by the rear coach of said train, there being three coaches intervening between deceased and the engineer pulling said train." Defendant was negligent in the following particulars: (*a*) In running the train backward without sufficient lights and at an unusual rate of speed, to wit, about fifteen miles an hour. (*b*) In not giving the customary signals at the street-crossing which it passed over just prior to killing the deceased, thus showing that the train-crew were not at their proper or customary posts of duty, or else were grossly negligent in failing to give proper signals of the approach of the train. (*c*) In permitting the show to use the right of way for the purpose of congregating a crowd thereon adjacent to the railroad-track and a public-street crossing in an incorporated town, the show being in such a place as to easily distract the attention of the train-crew operating the train and cause them to be negligent and watch the crowd and tent instead of the operation of the train. (*d*) In making no attempt to stop the train or check its speed after they discovered the deceased upon the track and in front of the train as it moved backward. The conductor and the brakeman of the train were standing on its rear platform at the time, and saw the deceased on the track, or could have seen him had they been attending to their duties, in ample time to bring the train to a stop before striking him, and they made no attempt to stop it or to check its speed. The defendant's employees on the rear coach failed to keep a lookout for persons or things on the track. The defendant was especially negligent in its failure to keep such a lookout at that time and place. Each of the said acts of negligence contributed to and proximately caused the homicide. The deceased was in the exercise of ordinary care. He was in a few feet of a public-street crossing where the track was in constant use by the public both by day and by night, with the defendant's full knowledge and consent, and by reason of the renting of the premises by the defendant for the purpose of allowing the show to perform. No signal of the approach of the train was given him, it was running rapidly, and under the conditions stated he could not see its approach until it

was immediately upon him and it was too late for him to avoid being struck. By reason of the homicide the defendant has damaged the plaintiff in the sum of $7,000, which sum, or any part of it, the defendant refuses to pay.

The amendment which the court refused to allow was as follows: "1. Plaintiff is the widowed mother of said deceased and at the time of said homicide was in ill health and unable to labor or earn a living, she was possessed of no property, and was entirely dependent upon the labor of said deceased for her support and maintenance. 2. Said defendant wilfully and wantonly ran its train over and killed said deceased after they knew he was upon their tracks."

The defendant demurred to the petition generally, and to specified parts, which it moved to strike, without stating why it demurred to these parts.

*Frank G. Rabb,* for plaintiff.

*Saffold & Jordan, Dixon & Dixon,* for defendant.