31400. HOFFMAN *et al.* *v.* LOUIS L. BATTEY POST, etc., AMERICAN LEGION.

Decided October 18, 1946.

*Pierce Brothers,* for plaintiffs in error.

*Isaac S. Peebles Jr., Cohen & Cohen,* contra.

FELTON, J. ■ Where a contract is breached and suit is brought for damages, alleged to consist in the loss of profits which would have been earned directly under the contract except for its breach,

the petition will be held to be good against general demurrer if the loss is such as was or must have been within the contemplation of the parties when entering into the contract, and if the damages sought are the legal and natural result of the breach, such damages not necessarily being too remote or speculative merely because they are to some extent contingent. Code, § 20-1407; *Walker* v. *Jenkins, 32 Ga. App.* 238 (123 S. E. 161); *Baldwin* v. *Marqueze,* 91 *Ga.* 404 (18 S. E. 309); *American Agricultural Chemical Co.* v. *Rhodes,* 139 *Ga.* 495 (77 S. E. 582); *Gore* v. *Malsby,* 110 *Ga.* 893 (36 S. E. 315); *Fontaine* v. *Baxley,* 90 *Ga.* 416 (17 S. E. 1015); *Stewart* v. *Lanier House Co.,* 75 *Ga.* 582; *Western Union Telegraph Co.* v. *Fatman,* 73 *Ga.* 285 (54 Am. R. 877); *Carolina Portland Cement Co.* v. *Columbia Improvement Co.,* 3 *Ga. App.* 483 (60 S. E. 279); *Tygart* v. *Albritton, 5 Ga. App.* 412 (63 S. E. 521); *McIntosh* v. *Patton,* 12 *Ga. App.* 305 (77 S. E. 6); *Mimms* v. *Betts·Co.,* 9 *Ga. App.* 718 (72 S. E. 271); *Tanner* v. *Campbell,* 182 *Ga.* 121 (184 S. E. 705).

Under the terms of the contract sued on, the defendants were to put on a circus in Augusta, consisting of 68 circus acts, including a complete three-ring circus, consisting of aerial acts, trapeze acts, juggling and balancing, horse acts, trained domestic and wild-animal acts, etc.; and all performances were to be first-class performances in keeping with those at Paris Island, S. C., and at other camps and locations of the various armed forces. The first of the five performances was to be given on the evening of November 22, 1944. The defendants were to furnish all printed advertising copy and write-ups to go into the newspapers, or to be used over the radio, and the posters, advertising the circus, were to be placed within a radius of fifty miles of the City of Augusta; and it is alleged by way of amendment that it was orally agreed to give parades on each of two days. It was also significantly stipulated that the defendants should furnish to the plaintiff an indemnity bond conditioned upon the appearance of the circus and the defendants' faithful performance of the contract. Under the allegations of the petition, almost every term of the agreement was breached by the defendants and calculated to result in the loss of profit to the plaintiff. It is alleged: that no parade was given as advertised; no performance was given the first evening for which

a performance was advertised; posters were never at any time put up within a radius of fifty miles of the City of Augusta; the performances were not first-class performances; only two-ring performances were given, instead of the advertised three-ring performances; only sixteen acts instead of the advertised sixty-eight acts were performed; there were no juggling and balancing acts, except one tight-rope walking act; no wild-animal acts were given as advertised, etc.; and that these breaches of the contract and failure of the circus to give the performances advertised caused the public to lose faith in the truth of the advertisements and caused such discontent among those persons who did attend as to cause numerous persons to forego the circus, who would have otherwise attended.

Certainly it can not be said that the alleged breaches of the contract on the part of the defendants would have resulted in other than a decrease in attendance and loss of profits. It seems to us a natural result, a result which the parties must certainly have had within their contemplation in drawing the contract in the language which it contains; and if the damages were not within the contemplation of the parties, one is forced to wonder at the requirement of the indemnity bond for the faithful performance of the contract. Nor can we say that, though a number of contingencies may enter into the calculation of the profits which would have inured to the plaintiff in the absence of the alleged breaches of the contract, the plaintiff's damages are too speculative and incapable of proof. We think that, as was said in *Chappell* v. *Western Railway*, 8 *Ga. App.* 787 (70 S. E. 208): "If the jury is informed as to what the receipts of this company [circus] in other towns of similar size were, what other companies of similar character had earned in the same town at similar performances, what the state of the weather was, what the other surrounding conditions were, they can estimate fairly what the earnings from this particular performance would have been." The profits sought in this case were those profits which would have been the immediate fruit of the contract save for the defendants' alleged breaches of the contract, as in *Mitchell* v. *Henry Vogt Machine Co.*, 3 *Ga. App.* 542 (60 S. E. 295); *Anderson* v. *Hilton & Dodge Co.*, 121 *Ga.* 688 (49 S. E. 275); and are not like the profits in that line of cases where the profits sued for were those

which might have been derived from some other or collateral contract and are not recoverable. *Seaboard Air-Line Ry.* v. *Harris,* 121 *Ga.* 707 (49 S. E. 703) ; *Clay* v. *Western Union Tel. Co.,* 81 *Ga.* 285 (6 S. E. 813, 12 Am. St. R. 316).

■ The plaintiff amended its petition, alleging that the defendants had incurred bills for services and labor amounting to $602.85, and when the time came to settle them on the last day of the circus, the defendants stated that they did not have the money to pay them, that the bills were correct, and they requested the plaintiff to advance the money to pay them, and these accounts were duly transferred and assigned to the plaintiff. This amendment was allowed and ordered filed, without a provision in the court's order that such amendment be allowed subject to demurrer. The defendants renewed their demurrers to the petition as amended and objected to the allowance of the amendment, but filed no exceptions pendente lite to the allowance of the amendment, nor is there any assignment of error in the main bill of exceptions to the allowance of the amendment. Though this amendment may set forth a new cause or causes of action, there is no proper objection to this addition, and therefore no question is presented for determination upon this point. *Dyson* v. *Southern Ry. Co.,* 113 *Ga.* 327 (38 S. E. 749) ; *Johnson* v. *Bank of Tallapoosa,* 32 *Ga. App.* 317 (123 S. E. 42).

■ The petition is not subject to demurrer upon the ground that it shows on its face that the plaintiff breached the contract instead of the defendants. It is the contention of the defendants that under the allegations it is shown that it was incumbent upon the plaintiff to pay the defendants the sum of $4500 from the advance sale of sponsors' tickets, and that this placed an obligation upon the plaintiff to sell tickets to this amount, which it had failed to do; and, moreover, that it is shown by the two supplemental agreements, which were in the nature of receipts, that this was the intention of the parties, in that the advances made to the defendants were to be credited against the $4500 due the defendants from the sale of all tickets, both advance sponsors' tickets and door tickets.

The contract was not ambiguous in its provisions. It clearly stipulated that the conditions under which the $4500 was to be paid was "from the advance sale of sponsors' tickets, . . if the advance sale of tickets equal this amount. If this amount is not received from the advance sale of sponsors' tickets, then sufficient

money will be taken from the receipts when the performances start to make up the unpaid balance . . and the party of the first part [plaintiff] shall be under no obligation to pay the same except from the sources set out above . . [and] if the sale of sponsors' tickets and door tickets, etc., shall fail to equal the stipulated amount of $4500 plus the amount of the budget, then the expenses set out in the budget shall be shared equally by both parties to this contract, so that the only liability that can possibly be incurred by the party of the first part is one-half of the unpaid portion of the budget." There was not under the terms of the contract any absolute duty upon the plaintiff to sell $4500 worth of advance tickets, nor any duty upon the plaintiff to pay the defendants the $4500 unless the tickets sold at the door and the advance tickets sold should realize this amount. It is, of course, true that the cardinal principle in the construction of contracts is that the intention of the parties be ascertained (Code, § 20-702) ; and it is also the rule that, if the intentions of the parties differ, the meaning placed on the contract by one party, and known to be thus understood by the other party at the time, shall be held as the true meaning. Code, § 20-703. However, this rule is not applicable where the contract is not ambiguous. *Holloway* v. *Brown,* 171 *Ga.* 481 (155 S. E. 917). Nor do the latter agreements in any manner show a different intention or understanding between the parties inconsistent with the terms of the original contract. The contract was executed on October 2, 1944, providing for circus performances on November 22, 23, and 24, 1944. The next agreement was executed on October 7, 1944, and, as is recited therein, before the sale of any advance tickets; and the next agreement was executed on November 15, 1944, some seven days before the first performance was to be given. The sums advanced to the defendants were to be credited against the obligation of the plaintiff provided for in the original contract. There was no obligation in the original contract upon the plaintiff to sell tickets to the amount of $4500. The contract provided in substance that the plaintiff would attempt to sell sufficient sponsors' tickets to realize the sum of $4500, and in the event that this failed sufficient money would be deducted from the sale of tickets at the door to the performances to make up any difference between the money realized by the sale of advance tickets

and the stipulated $4500. In the event that both the door ticket and sponsors' ticket sales failed to realize this amount, the plaintiff was bound to pay only one-half of the sum provided for in the budget. The latter agreements in no way changed this obligation of the plaintiff. They were not executed for the purpose of changing its obligation, but merely for the purpose of assisting the defendants in the performance of their part of the contract; and, moreover, the first of the latter agreements provided that it was made for the purpose of facilitating the defendants in making arrangements for the prompt posting of bills, etc., and that the balance due, after crediting $500 advanced by the plaintiff and an additional $750 allowed by the defendants as a credit against the $4500, "will be paid by said Battey Post *as provided in said [original] contract.*" We have indicated above that the only absolute obligation on the part of the plaintiff, under the provisions of the original contract, was to pay one-half of the expenses of the budget. The clear language of the latter agreement says that this obligation is not changed. At the time the latter agreements were executed and accepted by the plaintiff, it was still anticipating such success, at that early stage in its sale of advance tickets, as to bring in the stipulated sum of $4500 and would naturally, we think, find no objection to the recital in the latter agreements that the advances should be credited against the stipulated $4500. Moreover, even if it could be said that the latter agreements did obligate the plaintiff, in terms, to pay $4500 to the defendants or sell advance and door tickets realizing this sum, there was no consideration moving to the plaintiff for such a promise.

■ The defendants' contention that the undertaking by the plaintiff and the defendants to put on the circus and share the profits and losses constituted the relationship of a partnership, which would preclude suit by one partner against the other, is without merit. The petition clearly alleges that the plaintiff is a corporation. "The powers of a corporation are limited and fixed by the act of incorporation and, besides the powers thus specially granted, it has those which are common to all corporations. The power to form a partnership is not one of those which is common to all corporations;" and unless its charter conferred such power upon it, this corporation had no authority to enter into a partnership

with natural persons. *Gunn* v. *Central Railroad,* 74 *Ga.* 509; *Ledsinger* v. *Central Line Steamers,* 75 *Ga.* 567; *Davis* v. *Savannah Lumber Co.,* 11 *Ga. App.* 610 (75 S. E. 986); *Wallis* v. *Heard,* 16 *Ga. App.* 802 (86 S. E. 391). Nor will such authority be presumed in the absence of an allegation that the charter did confer such authority. *Clement A. Evans & Co.* v. *Waggoner,* 197 *Ga.* 857 (30 S. E. 2d, 915); *Brunswick Timber Co.* v. *Guy,* 52 *Ga. App.* 617 (184 S. E. 426). Nor would designating the undertaking as a joint adventure or joint enterprise—in which, under the ruling in the *Waggoner* case, supra, a corporation may engage provided the nature of the enterprise comes within the scope of the corporation's ordinary and legitimate powers—preclude the present action, as one joint adventurer may sue the other for a breach of the contract defining the terms of the undertaking and establishing the relationship of joint adventurers. *Clement A. Evans & Co.* v. *Waggoner,* supra; *Sloan* v. *Haley,* 18 *Ga. App.* 631 (90 S. E. 74).

■ The defendants' demurrer upon the ground that the petition shows that whatever payments the plaintiff made to parties other than the defendants were voluntary, and were not covered by any contract between the plaintiff and the defendants, if considered as a general demurrer, was properly overruled. The petition alleged that the plaintiff had been damaged in a certain amount by reason of having to pay the entire budget, when one-half of the budget, under the terms of the contract, should have been paid by the defendants; and further alleged damage upon the ground of the plaintiff's having paid certain other expenses incurred by the defendants, which were not covered by the contract or included in the budget. The latter allegation was amended to show that by a subsequent oral agreement these expenses had been paid at the request of the defendants and duly assigned and transferred. No proper objection was made to this amendment. In view of this amendment and what has been ruled in division one of this opinion, the petition set out a cause of action as to at least part of the damages sought; and where any part of a petition is good, a general demurrer should not prevail. *Reese* v. *Reese,* 89 *Ga.* 645 (15 S. E. 846); *Mayor & Council of Athens* v. *Smith,* 111 *Ga.* 870 (36 S. E. 955), and cases cited. While under the state of the pleadings in this case it may be that the allegation as to the dam-

ages sought by reason of having paid the defendants' one-half of the budget expenses might have been subject to special demurrer—considered as such, the defendants' demurrer fails to fulfill this office. A special demurrer, being itself a critic, must be perfect and the party demurring "must lay, as it were, his finger on the very point," otherwise the demurrer will be overruled. *Martin* v. *Bartow Iron Works,* 35 *Ga.* 320; *Scott* v. *Central of Georgia Ry. Co.,* 18 *Ga. App.* 159 (88 S. E. 995); *Katz* v. *Turner,* 49 *Ga. App.* 81 (174 S. E. 167), and cases cited.

For the foregoing reasons the court did not err in overruling the defendants' demurrer to the petition.

*Judgment affirmed. Sutton, P. J., and Parker, J., concur.*