2671.   LEVERETTE *v.* JEFFRIES..

1. The court did not err in overruling the objections offered to the testimony and in admitting testimony illustrative of the issue, which was properly raised, that the defendant was not a tenant, but a purchaser. While a tenant can not dispute the title of his landlord, still, upon the levy of a distress warrant and in filing his counter-affidavit, he may defend by showing that the contract denominated as one of rental was in fact a contract of purchase.

2. The testimony upon the issue thus raised was in conflict, the determination of the question whether the plaintiff was or was not the defendant's landlord was one of fact for the solution of the jury only, and the court erred in directing a verdict.

DECIDED FEBRUARY 15, 1911.

Distress warrant; from city court of Monticello—Fleming Jordan Jr., judge pro hac vice.   May 9, 1910.

*W. S: Florence,* for plaintiff.

*Greene F. Johnson,* for defendant.

RUSSELL, J.   1. Leverette sued out a distress warrant to recover the value of 2,000 pounds of lint cotton which he claimed that Jeffries owed him upon a rent note.   Jeffries interposed a counter-affidavit, setting up that the sum distrained for was not due.   While this counter-affidavit is perhaps a little too general to include the exact defense relied upon in the course of the trial, the defendant was not required to amend.   A number of objections were made at the trial to evidence which was admitted by the court, based upon the general principle that a tenant can not dispute his landlord's title.   We think these objections were properly overruled.   As to the evidence that Jeffries held by a contract of purchase, while it is true, of course, that a tenant can not dispute his landlord's title, and while it is true that the counter-affidavit did not expressly deny that Jeffries was Leverette's tenant and thereby expressly make the contention that he held by purchase, still as there was no objection to the form of the counter-affidavit, the objection to the evidence could not be sustained.   When one person claims that another is

his tenant, and there is a written contract between the parties, while parol evidence is not admissible to vary the terms of the writing if it be unambiguous, still the contract may be either a lease with a right to purchase, or a contract of purchase with a provision to lease the premises in default of the payment of the purchase price; and if the writing be ambiguous, parol evidence may be resorted to, to determine the true intent of the parties. Again, while the contents of the writing can not be affected by parol, the circumstances under which the agreement was entered into, or the conditions upon which the writing was delivered, may be presented to the jury to enable them to say whether the contract as written was in fact entered into, or whether it was delivered for a different purpose from that which its terms would indicate.

It seems from the record that Jeffries in 1904 purchased about 200 acres of land from the heirs of the Huff estate, with a proviso that he should pay 2,000 pounds of lint cotton each year as rent after the year 1905, and if he defaulted in the payment of any of the notes, all of the other notes were to mature. He was to make the first payment on the place by the erection of a house in 1905. The point is not made that the house was not built. In 1906 he paid $43.40 upon the note for that year, which was $410. In 1907 he paid $100 upon the note for that year, which was $310. This $100 he received from the sale of timber cut from the place, but this fact is immaterial, because if the contract be treated as a bond for title, and his possession as that of a purchaser thereunder, there was no reason why he could not cut and sell timber, at least in the absence of any objection on the part of the vendor. Each of the purchase-money notes except the first specified that if not paid at maturity, the other notes unpaid should immediately become due and payable, time being of the essence of the contract. It is uncontradicted in the evidence that none of the notes, except for the payment mentioned, were paid. Nothing was paid upon the third note. Leverette purchased from the Huffs (under whom Jeffries had entered) the same tract of land, and by the Huffs was given a bond for title. Then Leverette sold to Harvey, transferring to him his bond for title, and the Huffs executed and delivered to Harvey a deed. Intermediate between Leverette's purchase of the land from the Huffs and his sale to Harvey, the rent note for which Leverette distrained Jeffries' crops was given; and the testimony is undis-

puted that so far as Leverette and Harvey are concerned, there was an agreement upon the part of the latter that Leverette should have the rents for the year 1909. Leverette testified, that the defendant told him he had given up all claim to the place, but would be glad if he (Leverette) would buy it and give him a chance to pay for it, that he had first declined the idea of purchasing a place, but, after going over it with Jeffries, he changed his mind and bought it of the Huffs for $1100. According to Leverette's testimony he at no time had possession of Jeffries' notes to Huff. They were never delivered to him, and had no place in the contract between the Huffs and himself, though he stated he told the defendant that he would sell to him the place upon the date of the maturity of the last note, —October 1, 1909, if he was paid at that time the amount that the Huff notes called for, and that in that event he would charge him no rent for the year 1909. However, Leverette testified, that upon the definite understanding that Jeffries was to pay him 2,000 pounds of lint cotton for the rent of the place for 1909, and upon Jeffries' complete surrender of all claims under his former contracts, he permitted Jeffries to remain, and Jeffries voluntarily executed and delivered to him the rent note for 2,000 pounds of lint cotton; that he held the land ready to comply with his verbal contract to sell it, for sometime after October 1, and Jeffries failing to accept his proposition, he sold the land to Harvey, and sued out the distress warrant for the value of the 2,000 pounds of lint cotton mentioned in the note. As to the transaction between the Huffs and Jeffries, the testimony for the defendant did not vary materially from Leverette's understanding, so far as he was informed, but the question of the admissibility of the parol evidence does not arise upon the Huff notes or the contract. While Leverette's bond for title and Huff's deed, so far as appears, were not put in evidence, no objection was made to the witnesses testifying to their existence and contents, and therefore these facts were proved by secondary evidence because the better evidence was not insisted upon. That Jeffries gave Leverette his note for the two thousand pounds of lint cotton is admitted, but the real question as to the exact relation between Leverette and Jeffries after Huff sold the place to Leverette rested in parol, because the contract that was made between them, whatever it was, was wholly in parol. It is true that the note which Jeffries gave Leverette specified that it was for the rent of 200 acres

of land, known as the James Huff place, and described the land by naming the adjoining landowners, but it is well settled that the consideration of a note is always a legitimate subject of inquiry, and it has often been held that where the consideration of a contract purports to be rent, it may be shown that such was not the true consideration. Powell on Actions for Land, § 372; *Lytle* v. *Scottish Am. Mortgage Co.,* 122 *Ga.* 459 (7), 467 (50 S. E. 402); *Horne* v. *Mullis,* 119 *Ga.* 534, 537 (46 S. E. 663). This rule does not infringe upon the hoary maxim that the tenant can not dispute his landlord's title, nor was the holding of the judge in this case violative of this rule. Proof that A does not owe B for rent does not in any wise deny B's title, if, denying that he owes B the rent, A asserts that the reason why he does not owe him rent is because he has purchased the property from B. So far from being a denial of B's title, A asserts that his rights depend on B's title, and upon B's compliance with a prior agreement to invest him with title. Jeffries in this case did not dispute Leverette's title to the land, but his case rested upon the parol contract or understanding which he claimed to have had with Leverette, under which, as he testified, Leverette took up the notes from Huff with the understanding that Leverette was to carry out Huff's agreement, and he contended that Leverette's purchase was made solely for that purpose. As this agreement rested wholly in parol, if no other objection was made to the testimony, the proof of the agreement would necessarily depend upon parol evidence. Hence there was no error in any of the rulings of the judge upon the objections made to the testimony.

2. From what we have said above, we think it is evident that the trial judge erred in directing a verdict. It is true that Jeffries testified that Leverette, in purchasing the place, purchased it as his agent, agreeing to pay off the Huff notes and to give him a chance to buy the place by paying the face value of those notes. without any other stipulations, and that he gave the note for the 2.000 pounds of cotton simply as an accommodation to Leverette in return, presumably to enable him to hypothecate the note and raise money; but Leverette testified to the agreement which is set forth at the beginning of this opinion, and his testimony would have entitled him to a verdict. The question as to what was the real agreement between these parties is one purely of fact. It can only properly be settled by a jury, and, as we have frequently held, the judge should

never invade the jury box. It is never error to refuse to direct a verdict. A judge never directs a verdict except at his peril. The error of directing a verdict is only harmless when the jury could not, under any possible view of the case, have found any other verdict than the verdict which the court directed. If there is one slender thread of fact upon which the jury can reasonably hang a verdict,—if it is but large enough to be perceptible, the judge's hand must not touch it. Not only when the scales are well nigh evenly balanced must the jury weigh the facts, but even if to the judge's eye one side be weightier far than the other, it is in the jury's power to judge, not altogether by the weight, but also by their estimate of the value of the scales' contents. In every case in which there is doubt the juries are the doctors.

*Judgment reversed.*