### 5978.  WALLIS *et al. v.* HEARD.

The trial was fair and free from error, the verdict was authorized by the evidence, and the requests for instructions, so far as pertinent, were covered by the charge of the court. There was no error in any of the rulings on testimony, and the court did not err in overruling the motion for a new trial.

DECIDED AUGUST 5, 1915.  REHEARING DENIED SEPTEMBER 30, 1915.

Complaint; from city court of Americus—Judge Harper. July 25, 1914.

Miss Allie Heard, as holder of a promissory note for $1,500 and interest, payable to Dixie Chemical & Mining Company, of Columbus, Ga., sued the makers, L. P. Gartner and W. P. Wallis, for the amount of the note, with attorney's fees as provided for therein. The defendants sought to set up in defense certain alleged agreements between themselves and the original payee of the note, and pleaded failure of consideration, and also pleaded a set-off. The trial resulted in a verdict against them for $1,237 principal, besides interest and attorney's fees. Their motion for a new trial was overruled, and they excepted.

*Wallis & Fort,* for plaintiffs in error.

*McCutchen & Bowden, W. W. Dykes,* contra.

RUSSELL, C. J. It appears from the record that the plaintiffs in error on December 20, 1912, executed and delivered to Dixie Chemical & Mining Company, of Columbus, Ga., a note for $1,500, payable at the Bank of Southwestern Georgia, Americus, Ga. The note, as appears from its face, is non-negotiable. The consideration expressed in one part of it is "value received," but there were inserted, as the concluding phrase of the instrument and impliedly expressive of the real consideration, the words, "Part rental of plant of Dixie Chemical & Mining Company, as per terms of lease of even date." The court admitted the contract of lease or rental referred to in the note, and excluded testimony tending to show negotiations and understandings between M. F. Thompson Jr., the president of the Dixie Chemical & Mining Company, and the defendants anterior to the making of the contract of December 20, 1912; and the exclusion of this evidence forms the basis of the exceptions most strenuously insisted upon by the plaintiffs in error. The so-called contract or paper which was repelled by the court was never signed by the Dixie Chemical & Mining Company or any

person in its behalf, but was merely mailed to Mr. M. F. Thompson Jr., the president of the company. In the alleged unsigned contract it appeared that M. F. Thompson Jr., as a partner of Wallis and Gartner, was also to contract on the one part, and as one of the parties interested with Wallis and Gartner, with the Dixie Chemical & Mining Company on the other part. Regardless of whether the contract would be valid though not signed by the Dixie Chemical & Mining Company or by Thompson, the trial judge correctly held that the notice to Thompson, though he was president of the corporation, the Dixie Chemical & Mining Company, was not notice to the corporation of the stipulations or understandings embraced in the purported contract. It is well settled, of course, that ordinarily a corporation is presumed to have notice of any material fact disclosed to any agent authorized to act in its behalf in the peculiar circumstances or with reference to the particular business or undertaking at hand. It is equally well settled, as an exception to this rule, that where a director or other officer of a corporation is dealing in his own behalf or in conjunction with others in making a contract with the corporation, he becomes an adverse party, and notice to him is not notice to the corporation.

It would be impracticable to discuss in detail the voluminous record in this case. In addition to the general grounds of the motion for a new trial it contains 25 grounds, alleging errors in the charge of the court as delivered, error in refusing to give instructions requested by the defendants, and error in the admission and exclusion of testimony. We have carefully examined the pleadings, the evidence, and each of the assignments of error contained in the motion for a new trial. Some of the assignments of error are too incomplete to present any question for adjudication. One of the requests for instructions, the refusal of which is assigned as error, is appended to the motion for a new trial as an exhibit, and consists of numerous requests en bloc, some of which were not appropriate or adjusted to the evidence, and therefore the court was authorized to refuse all of them; and as it contains in several instances references merely by number to code sections, and mere citations of decisions, the court could not in any view of the case have treated it as a written request for definite instructions. *Thompson* v. *O'Connor,* 115 *Ga.* 120 (5), 123 (41 S. E. 242).

There are several grounds of the motion for a new trial in which

error is assigned upon the refusal of the court to give instructions as to various phases of the case under which the defendant would be entitled to defend upon the theory that the plaintiff was not a bona fide purchaser for value, and had no title to the note; and if the evidence had not shown prima facie that the plaintiff had title, or if there had been any evidence to rebut this presumption, we should have held that the assignments based upon the court's refusal to charge with reference to the defendant's right to inquire into the title of the plaintiff are meritorious. But although the note in suit is non-negotiable, there is evidence of an indorsement which purports to transfer the note to the holder thereof, and presumptively the holder of a note has the right to maintain suit thereon. This presumption was not rebutted by any evidence in the case. According to the testimony, the note was indorsed by the vice-president of the payee corporation to the plaintiff's brother, and by his indorsement was transferred to the plaintiff. The evidence disclosed that while the note was deposited as collateral for a note signed only by Thompson, Thompson had given his individual note for a debt not due by himself, but for the Dixie Chemical & Mining Company, the original payee, the consideration of the indebtedness evidenced by Thompson's note being machinery purchased for and delivered to and used by the corporation. In other words, the Dixie Chemical & Mining Company owed for certain machinery; the creditors of the corporation preferred to take Thompson's individual note than to have the note of the corporation, and the original debt was, after all, the debt of the corporation, and it was to secure this debt of the corporation that the note of the defendants, Wallis and Gartner, was deposited as collateral. It is true that the title of a holder of a promissory note may be inquired into when it is necessary for the protection of the defendant or the maker of the note, and it is insisted by the plaintiffs in error that as the payee in the instant case is a corporation and the title had not passed out of the corporation by proper corporate resolution or through authorized corporate action, the defendants might be subjected to the risk of paying the note a second time. We think that the presumption that the holder of a note who sues upon it has title would, in the absence of any evidence rebutting the presumption, be sufficient to protect the maker from further liability; but certainly the evidence in the present record, disclosing that the note

was given and transferred to secure a debt originally contracted for the corporation and for which the corporation had received the benefit, sufficiently established the fact that the transfer, ex æquo et bono, is binding upon the corporation, and that the corporation would be estopped to demand payment upon the contract. Section 4288 of the Civil Code declares: "The holder of a note is presumed to be such bona fide and for value; if either fact is negatived by proof, the defendants are let in to all their defenses; such presumption is negatived by proof of any fraud in the procurement of the note." Of course the holder of a note as collateral security stands upon the same footing as a purchaser; and section 4290 does not contain a general provision for inquiring into the title of the holders of notes, but on the contrary merely provides an exception to the general rule laid down in the first clause of section 4288, which expressly declares that the title of a holder of a note can not be inquired into unless it is necessary for the protection of the defendant or to let in the defense which he seeks to make. We think the evidence as to the transfer to which we have called attention, in the absence of any proof of fraud on the part of the holder, Miss Heard, in the procurement of the note, clearly dispensed with the necessity for inquiring into her title on the ground that it was necessary for the protection of the defendants. And it was not necessary that any inquiry should be made into the validity of Miss Heard's title for the purpose of letting in any defense the defendants sought to make, for the court charged the jury that, "under the ruling of the court, the defendants are here permitted to make, as against the note in her hands, any defense which they would have the right to make against the original payee, the chemical company."

Several exceptions are based upon the refusal of the court to give instructions to the effect that the defendant, being entitled to inquire into the consideration of the note, was entitled to show, although the note and contract denominated the consideration as "rent," that this was not the real consideration. It is insisted by the defendant that antecedent to and perhaps contemporaneously with the execution of the contract of December 20, 1912, the Dixie Chemical & Mining Company, by parol agreement, constituted Wallis and Gartner quasi trustees for the purpose of operating its plant. It was contended that under this agreement the Dixie

Chemical & Mining Company were to be liable for losses, if any were incurred, in the operation of the plant; and that the loss, which exceeded the amount of the note in suit, was proper subject-matter of set-off as against the note. The case of *Leverette* v. *Jeffries*, 8 *Ga. App.* 798 (70 S. E. 177), was relied upon by the plaintiffs in error in support of their contention. It is well settled, of course, that a consideration stated to be rent may by parol testimony be shown to be for purchase-money of the property described, and that this does not conflict with the maxim that the tenant can not dispute his landlord's title. It does not conflict with that maxim for the reason that, after all, the sale which it is attempted to set up depends as much upon the landlord's title as does his right to collect rent. In our opinion the consideration of a note can always be inquired into, and the mere denomination of the consideration as "rent," in a contract ambiguous in its terms, would be subject to parol explanation. The case at bar, however, differs from that of *Leverette* v. *Jeffries,* supra, in more than one particular. There is no ambiguity in the terms of the contract here involved. *It is further to be borne in mind that in the case at bar the note rests upon the contract which the court permitted to be introduced, and it is* expressly stated in the contract (as excluding any outside undertakings and including all the agreements of the parties) that "it is upon the terms herein stated that the said W. P. Wallis and L. P. Gartner became the lessees of said property," and the only provision of the contract, subsequent to this express statement that the contract itself was conclusive of all negotiations between the parties, is that which relates to the amount of the rental and the dates upon which it is to be paid, and which provides that in the event of the purchase of the property by the Southern Mining Company, $2,500 of the rental is to be applied in part payment of the purchase-price. For this reason we think there was no error in refusing the requests contained in ground "R" of the motion for a new trial, even if the request were otherwise appropriate.

The court, by amendment, allowed the defendants to plead failure of consideration as against Miss Heard, fraud in the procurement of the note, set-off of any expenditures made by the defendants upon which they insisted, during the period of time prior to the making of the contract on December 20, 1912, and in fact sus-

tained every contention of the defendants except that by which they sought to set up that the contract of December 20, which was signed by all parties, was not the real contract between the parties, and to prove by parol that the real contract was a different undertaking, agreed to and understood by the parties, which rested partly in parol and partly in a paper signed by the defendants, and never singed by the Dixie Chemical & Mining Company or by any one purporting to act for it. The evidence as to this proposed contract was that Wallis & Gartner prepared and themselves signed this contract. They mailed it to Thompson. Neither Thompson nor the company ever signed or returned it. There was no evidence that the failure to sign was due to fraud, accident, or mistake, and for that reason the only legitimate inference to be drawn from a failure to return the contract is that they never did become satisfied to execute it or determine not to sign it. The court properly excluded the parol testimony that was offered to show that the contract of December 20 was not a contract of lease or rental. There is no ambiguity in the contract. In construing the contract of December 20 the court correctly held that the relation created by the contract between the Dixie Chemical & Mining Company on the one hand and Wallis & Gartner on the other hand was that of landlord and tenant. The court correctly excluded testimony by which it was intended to vary the terms of the contract of December 20 and supplant that contract by the anterior understandings and statements of the parties. If there is one principle well settled, it is that in the absence of fraud, accident, or mistake, all prior negotiations and agreements are merged in the contract as it is written. The defendant had the right to rely upon the terms of the contract in defense of any action upon the note, because the note expressly referred to the contract "of even date," and was contemporaneous therewith and dependent upon the provisions of the contract; and the statement in the note, that it was for "part rental of plant of Dixie Chemical & Mining Company, as per terms of lease of even date," even if it were a circumstance sufficient to put any purchaser of the note on notice of the contents of the contract and to require the purchaser to investigate and ascertain the provisions of the contract to which reference is made in the note, did not authorize the defendants (especially after they had pleaded the contract of December 20) to substitute for that

instrument prior negotiations and agreements between the parties, which, if not merged in the written agreement, were excluded by it. The trial judge, both in the admission of testimony and in his instructions to the jury, was extremely liberal to the defendants as to their defense of set-off, and this resulted in a reduction in their favor of nearly $300.

The judge did not err in refusing to give several of the instructions requested by the defendants which embodied the principles relating to the rights of the plaintiff as a bona fide purchaser of a negotiable instrument for value and before maturity. It was admitted by the plaintiff that the instrument was not a negotiable instrument, and the judge not only ruled, in the admission of testimony, but he explicitly charged the jury, that the rule protecting bona fide purchasers of negotiable instruments before maturity did not apply to the plaintiff, and that the defendants were let in to any defense which they would have had against the original payee. Under the evidence submitted in support of each and all of the defendants' pleas, and, we think, upon sufficient evidence, the jury found that Miss Heard was entitled to recover as much as the Dixie Chemical & Mining Company would have been entitled to recover, and no more.

The defendants were permitted to introduce testimony to show that they were induced to enter into the contract by the alleged fraudulent representations of Thompson, the president and general manager of the corporation, but the jury were not compelled to find that the action should be defeated on account of the fraud of the original holder of the note, in view of the testimony that the defendants had operated the plant of the Dixie Chemical & Mining Company for several months before the lease was executed and the notes given. They were thoroughly familiar with the premises and property of the company and their condition at the time of entering into the contract and giving the several notes, one of which was the note sued on. The court would not have been authorized to instruct the jury that they could find as a set-off to the plaintiff's demand repairs and improvements during the period embraced in the contract of rental, since there was no evidence that the defendants called the attention of the landlord to the necessity for these repairs or improvements, and were compelled to make them on account of the landlord's refusal to repair, or failure to make the

repairs within a reasonable time. So far as appears from the evidence the repairs and improvements were made independently of any agreement with the landlord and regardless of the landlord's knowledge or consent, and in anticipation of the reorganization of the Dixie Chemical & Mining Company, in which event the defendants were to become largely interested in the new corporation at a low valuation, and receive the benefit of a deduction from the purchase-price of $2,500 of the $3,000 to be paid by them as rental. The contract provided that the property was to be returned in as good condition, excepting ordinary wear and tear, as that in which it was received by the lessees, and it does not appear that the physical condition of the premises was, by reason of any of the expenditures made by the defendants, placed in any better condition as a whole than it was at the time the contract was made.

We have already shown that the trial judge properly excluded the testimony as to the antecedent negotiations, understandings, and agreements between the parties prior to the execution of the contract of December 20, 1912, upon the ground that the effect of this testimony would have been to contradict and vary the terms of the written contract by parol, in the absence of any contention that the execution of the contract was due to fraud, accident, or mistake. The admission of the parol testimony offered by the defendants as to this point would have been in the very teeth of section 4268 of the Civil Code. However, this testimony was properly excluded by the court for another reason. Under the ruling of the court Miss Heard, the plaintiff, was placed in the same position that the Dixie Chemical & Mining Company would have occupied had the suit been brought in the name of the corporation itself instead of in that of the holder. Had the Dixie Chemical & Mining Company sued upon the note, the defendants could not have been let more fully into their legitimate defenses than they were under the sweeping ruling of the court in their favor. If the suit had been brought by the corporation, and the defendants had sought to defend upon the ground that the contract of December 20, 1912, did not speak the real contract, or, to put it more strongly, that that contract was a fraud upon the defendants, in that, while it specified that the consideration was the rent of the property leased, the real consideration for the contract was an agreement on the part of the Dixie Chemical & Mining Company to allow the defendants to operate the

company's plant, with the company subject to all expenses and losses and without compensation, still the defendants would have been met with the proposition that all the negotiations and agreements that rested in parol, as well as the alleged written contract which was mailed to M. F. Thompson Jr., its president, contemplated joint action on the part of the defendants with Thompson for his individual benefit, in common with the benefits accruing to Wallis and Gartner; and therefore, though Thompson was president of the corporation, there was no evidence that the corporation had any notice of the alleged negotiations or of the proposed contract which would bind it. It is plainly disclosed by the record that all the negotiations in regard to the property of the corporation, the purchase of its property, and its reorganization under a new charter (two charters seem to have been obtained, one in Sumter county, and the other in Dakota), were had with M. F. Thompson, and there was no proposition of purchase which did not expressly contemplate that Thompson, as well as Wallis and Gartner, and together with Wallis and Gartner, was to purchase the property of the Dixie Chemical & Mining Company. The entire negotiations extended over several months, and in each proposal Thompson was dealing for himself in conjunction with the defendants. It was necessary for the defendants to show notice to the corporation of any act by which their interests were affected or by which the defendants were defrauded, before the corporation would be affected thereby. If Thompson were shown to be a dual agent, it would have been necessary to show that he communicated to the corporation such facts as rested in his knowledge, since in dealing for himself his interests would be adverse to the interest of the corporation, whose existence he was seeking to extinguish. Even in a case of dual agency, where the agent is not representing himself but is the agent of two principals, the relationship must be viewed with some suspicion; for, as is said in Scripture, "No man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other." As a matter of law, it is well settled in this State that the writing designated as a contract, but which apparently was never signed except by the defendants, could not have been binding upon the corporation even if the corporation had signed it for the purpose alleged by the defendants; nor could the corporation have been bound by its stipulations

upon the theory that notice to Thompson of the stipulations of this contract was notice to the corporation. The effect of the testimony which the defendants sought to introduce and which the court properly excluded was to attempt to create a partnership between the corporation, on the one hand, and Thompson, Wallis, and Gartner on the other; and, of course, the Dixie Chemical & Mining Company, being a corporation, could not enter into a partnership. *Davis* v. *Savannah Lumber Co.*, 11 *Ga. App.* 610 (75 S. E. 986). This well-settled principle is to be found in the decisions of the Supreme Court from *Gunn* v. *Central Railroad*, 74 *Ga.* 509, to *Emmett* v. *Dekle*, 132 *Ga.* 593, 600 (64 S. E. 682). In proposing himself as one of the purchasers Thompson could not himself be the agent of the corporation to sell this property. Necessarily, therefore, he was an adverse party, and it is well settled that under such circumstances notice to an individual whose interest is adverse to that of the corporation is not notice to the corporation. A corporation is not to be charged with notice of facts of which its officer acquires knowledge while dealing in his private capacity and·in his own behalf with third persons, nor is knowledge on his part thus acquired imputable to the corporation, when it is proposed that the corporation act with him through another official and deal with him at arm's length as with any other individual representing himself alone. In Washington Bank *v.* Lewis, 22 Pickering, 24, one of the directors of the bank obtained possession of a note under the pretense of getting it discounted for the maker, and pledged it to the bank for a loan made to himself. The defendant contended that the director in getting the note from Lewis, the maker, was acting as agent of the bank, and therefore that the bank must suffer the loss, if any arose, from the fraudulent trading of the note, and that if, in obtaining the note, Thompson, the director, was not to be considered the agent of the bank, still, as one of the directors, his knowledge of the facts under which he received the note was in law knowledge of the whole board of directors, and therefore that the bank could maintain no action against the maker. As to this contention the Supreme Court of Massachusetts said: "Thompson was the party applying for the discount, and was not acting as director, nor could he with any propriety so act. He was the party with whom the bank contracted in discounting the note and to whom the money was paid; and it is perfectly clear that this

ground of defense can not be sustained." In Commercial Bank *v.* Cunningham, 24 Pickering, 270-276 (35 Am. D. 322), Parker, one of the directors of the Commercial Bank, knew that certain notes in which he was interested were accommodation notes, and the defendant sought to charge the bank with Parker's knowledge, but the Supreme Court of Massachusetts held, that "The knowledge of Parker, although he was one of the directors of the Commercial Bank, is no proof of notice to that corporation, especially as he was a party to all these contracts, whose interest might be opposed to that of the corporation." These decisions have been cited with approval by our own Supreme Court, as has also the ruling in Davis Co. *v.* Davis Co., 20 Fed. 699, in which case it was said: (p. 702) "Accordingly, it has been repeatedly adjudged that a corporation will not be charged by the knowledge of a director in a transaction in which the director is acting for himself, because he represents his own interests and not those of the corporation;" citing among other authorities the well-considered opinion in Terrell *v.* Bank of Mobile, 12 Ala. 502, in which it was held that the fraud of Scott, a director, in filling in a note for a greater amount than was intended by the makers did not affect the bank, though Scott sat as one of the board of directors when the note was taken and accepted by the bank.

Had the defendants in the present case shown that all the contracts and agreements which they insisted were made were formally executed by the corporation, these contracts would have been void, because it was ultra vires for the corporation to enter a partnership. Such agreements would also have been void in the absence of proof of other notice than that possessed by Thompson, because, pro re nata, his powers as an officer of the Dixie Chemical & Mining Company were suspended. He was contracting with the corporation. He was buying or renting, as the case might be, while the corporation was selling or assuming the position of landlord, and it can not be supposed, though he was an officer of the corporation, that he was co-operating with them in selling when he was the buyer, or in obtaining advantageous terms for the corporation as a landlord when he was to be one of those to pay the rent. And whether he did or did not, it can not be presumed that he made any disclosure which would have prejudiced his own interest. In *Morris* v. *Georgia Loan Co.*, 109 *Ga.* 12, 24 (34 S. E. 378, 46 L. R. A. 506), the Supreme

Court held as follows: "We concede it to be a sound proposition that where an officer or agent of a corporation, as a party interested himself, deals with the corporation, the latter is not charged with notice of the information possessed by such officer or agent so dealing . . because in such a transaction the assumed agent is in reality the adverse party, and is not to be treated in so dealing as agent of the corporation at all." Again, in the same case, it is stated that "A corporation is not charged with notice of facts known to its officer or agent in a transaction between him and the corporation in which he is acting for himself and not for the corporation." To the same effect are the rulings in *Merchants National Bank* v. *Demere*, 92 *Ga.* 735 (19 S. E. 38); *English-American Loan Co.* v. *Hiers*, 112 *Ga.* 823 (32 S. E. 103); *Peoples Bank of Talbotton* v. *Exchange Bank*, 116 *Ga.* 820 (3), 821 (43 S. E. 269, 94 Am. St. R. 144); *Taylor* v. *Felder*, 3 *Ga. App.* 287 (59 S. E. 844).

We conclude, upon a review of the entire record, that the trial was fair and free from error, the verdict was authorized by the evidence, and the court did not err in overruling the motion for a new trial.                              *Judgment affirmed.*