### 15319.  WALKER *v.* JENKINS.

1. "The objection that an action is prematurely brought can be raised only by a timely formal plea in abatement, or, if the defect appears on the face of the pleading, by a special demurrer filed at the first term. *Realty Company* v. *Ellis,* 4 *Ga. App.* 402 (61 S. E. 832), and cit.; *Jester* v. *Bainbridge Bank,* 4 *Ga. App.* 469." *Gate City Fire Insurance Co.* v. *Thornton,* 5 *Ga. App.* 585 (1) (63 S. E. 638). Furthermore, where an employee is wrongfully discharged before the end of his term, and elects to sue for a breach of the contract of employment, he may do so immediately and claim any special injury which he may have sustained in consequence of such breach. *Citizens Bank of Adrian* v. *Southern Securities Co.,* 143 *Ga.* 101 (1) (84 S. E. 565); Civil Code (1910), § 3588. In such an action the measure of damages is the actual loss from the breach of the contract, and in estimating the amount all facts down to the time of the trial may be considered. *Roberts* v. *Crowley,* 81 *Ga.* 429 (3) (7 S. E. 740). It does not appear from the petition in this case that the action was prematurely brought.

2. The contract shown by the petition in this case was one establishing the relation of principal and agent, and containing mutual obligations of the signatory parties. It was agreed therein that the selling agent would "devote his time during period specified in selling" named articles of the manufacturer "on terms and at prices" to be fixed by the manufacturer, and that the latter would pay the selling agent, "on

the first of each month after orders sold have been shipped, 15% gross commission on all sales." These stipulations, together with the contract as a whole, sufficiently disclose the appointment of an agent, the terms and conditions of the agency, and the compensation to be paid by the principal for the agent's services. The contract was not unilateral, and was a binding and enforceable agreement between principal and agent. *American Agricultural Chemical Co.* v. *Rhodes*, 139 *Ga.* 495 (1) (77 S. E. 582); *Palmer Brick Co.* v. *Woodward*, 138 *Ga.* 289 (1), 294 (75 S. E. 480); *Happ Bros. Co.* v. *Hunter Mfg. Co.*, 136 *Ga.* 671 (1) (71 S. E. 1099); *Phares* v. *Stover*, 136 *Ga.* 843 (1) (72 S. E. 344); *Fontaine* v. *Baxley*, 90 *Ga.* 416 (1), 425 (17 S. E. 1015); *Cooley* v. *Moss*, 123 *Ga.* 707 (2) (51 S. E. 625); *Swindell* v. *First National Bank*, 121 *Ga.* 714 (1) (49 S. E. 673); *Pacific Mutual &c. Co.* v. *Caraker*, 31 *Ga. App.* 707 (121 S. E. 876); *Anderson* v. *Mangham*, 32 *Ga. App.* 152 (123 S. E. 159).

3. The clause of the contract that the selling agent "is to pay his own expenses and to work the described territory as he may choose and at his own risk and liability" does not nullify the stipulation that the selling agent "will devote his time during period specified in selling" the manufacturer's products, but only has reference to the methods to be employed by the agent in effecting sales, including his itinerary, the persons upon whom he would call and other details in connection with the solicitation of orders, and to the fact that he must bear all expenses, and cannot reasonably mean that he could have chosen whether or not he would work at all.

4. In a suit by an agent or employee for damages resulting from a wrongful discharge by the principal or employer, "if there are mitigating facts, such as that earnings were realized, or might have been, between the wrongful dismissal and the end of the term, this is matter of defense." *Ansley* v. *Jordan*, 61 *Ga.* 483; *Phillips Lumber Co.* v. *Smith*, 7 *Ga. App.* 222 (3), 224 (66 S. E. 623). See *Mendel* v. *Converse*, 30 *Ga. App.* 549 (5) (118 S. E. 586); *Southern Upholstering Co.* v. *Lieberman*, 27 *Ga. App.* 703 (4) (109 S. E. 509).

5. Where one is employed to sell goods on commission, and the contract of employment is breached by the employer, and the salesman sues for damages alleged to consist in the loss of profits which he would have earned directly under the contract but for its breach, the petition will be held good on demurrer, if it furnishes reasonable data for computation and the loss is such as must have been within the contemplation of the parties when entering the contract. Damages which are the legal and natural result of the breach are not necessarily too remote to be recovered merely because they may be to some extent contingent. The petition set forth a cause of action, and therefore was not subject to the general demurrer.

6. Paragraph 27 of the petition, which alleged that "petitioner shows that his traveling and other expenses during said five months would not have exceeded the sum of $600," was not subject to demurrer on the ground that "it was speculative and not based on facts." The plaintiff alleged positively that this would have been his expense, and it cannot be said that there is any element of speculation therein.

7. The petition, however, in alleging that the plaintiff's sales for the period of his contract remaining after his discharge would each month

have increased to the extent of 25 per cent. over the sales of the preceding month, improperly introduced an element of uncertainty and speculation as to the corresponding increase in the profits which he would have realized under the contract, which rendered the allegations of paragraph 26, so far as they related to such increase, subject to the objection raised by the demurrer that the alleged damage was speculative, prospective, and not-capable of either accurate or just ascertainment. If this defect in the petition may not be cured otherwise so as to meet the demurrer, it may be done by proper allegations for the recovery of lost profits on the basis of sales made during the time in which the plaintiff was actually employed.

DECIDED APRIL 24, 1924.

Action on contract; from Fulton superior court—Judge Humphries. December 12, 1923.

W. M. Jenkins sued George W. Walker, trading as the Metallic Casket Company, for damages on account of an alleged breach of a contract between them, which was as follows:

"State of Georgia, Fulton County.—This contract made in duplicate this September 11, 1919, for a period of one year from date, between W. M. Jenkins, selling agent, on commission, and the Metallic Casket Company, manufacturer.

"It is agreed W. M. Jenkins will devote his time during period specified in selling the caskets and other articles listed by the Metallic Casket Company, on terms and at prices named by the Metallic Casket Company. It is agreed that the territory to be traveled by W. M. Jenkins shall be the State of Florida and Southern Georgia, and as far north as So. Ry., A. & W. P. to Newnan. It is further agreed that W. M. Jenkins is to pay his own expenses and to work the described territory as he may choose and at his own risk and liability. Expense money for two weeks to be advanced. The Metallic Casket Company agrees to pay W. M. Jenkins on the first of each month after orders sold have been shipped 15% gross commission on all sales of caskets, and 15% commission on all sales of cloth, handles, etc. It is agreed W. M. Jenkins shall receive commissions on all others [orders?] shipped into said territory by the Metallic Casket Company during the term of this contract." Signed by the parties.

It is alleged that the plaintiff sales agent began promptly to perform his duties and obligations under the contract; that he traveled from month to month in the territory assigned to him, and, by personal interviews and by correspondence, diligently de-

veloped and built up a constantly growing trade therein, and with such signal success as to gain cordial recognition and commendation from the defendant; that on April 9, 1920, after the contract had been in force for approximately seven months, defendant, without any previous intimation, informed petitioner that he had no further need for his services, defendant stating at the time that he had discontinued the manufacture of caskets, closed down his factory, and sold his business to other parties; and that thereby the defendant breached his contract to petitioner's injury and damage. The petition further alleges, that at the time plaintiff entered defendant's service defendant had recently completed and was just commencing the operation of his factory; that defendant was wholly unknown as a manufacturer of caskets in the territory assigned to petitioner, and that defendant proposed to introduce and sell a new casket, to wit: "Gleason's Metallic Casket," which was wholly unknown to petitioner's trade, and that by reason of this fact it was necessary for the plaintiff to do a great amount of preliminary work in order to promote and develop trade for a new and unknown company which was handling a new and unknown product as its principal line of business; and that, therefore, it required a period of some three to four months for petitioner to get a substantial start with sales in his territory; that from September 11, 1919, the day he commenced business, until December 6, 1919, the sales and shipments into his territory aggregated approximately $3,994.50; that during the period between December 6, 1919, and December 13, 1919, they amounted to approximately $2,283.90; that during the Christmas holidays season, from December 13, 1919, to January 3, 1920, they totalled approximately $647; so that during the first three months and three days of his contract the total sales and shipments into his territory were approximately $6,923.40; that from January 3 to February 6 they aggregated approximately $2,596.55; from February 6 to March 6 approximately $3,850.25, being an increase of 50 per cent. over the January sales; from March 6 to April 9 approximately $5,-680.80, being an increase of approximately 50 per cent. over his February sales; thus that for the period of three months and six days from January 3, 1920, to April 9, 1920, the date when, it is alleged, the contract was breached, the sales and shipments into his territory aggregated approximately $12,127.60; that dividing

16

the time he actually worked into two periods of approximately three months each, petitioner's sales during the second three months exceeded the first three months by more than 100 per cent., and his sales for January, February and March, 1920, month by month, exceeded each previous month's sales· approximately 50 per cent.

In paragraph 26 it is alleged that if the defendant had permitted plaintiff "to go on with his work during the five months remaining under the terms of his contract, he could and would have maintained as a minimum increase 25 per cent. each month over each previous month; that is to say, that had he been permitted to continue the performance of his contract to the date of its termination, petitioner's sales for the month of April would have aggregated as a minimum $7,101.00; and for the month of May $8,-876.25; and for the month of June $11,095.31; and for the month of July $13,869.18; and for the month of August $17,336.47; and your petitioner would and could have earned as commission during the five months remaining of his contract the gross sum of $8,-741.73, or 15 per cent. on $58,278.21, the aggregated estimated sales for the five months." In paragraph 27 it is alleged that "his traveling and other expenses during said five months would not have exceeded the sum of $600," leaving "a net profit of $8,141.73, being the amount of damages suffered by petitioner" as a result of the defendant's breach of the contract.

The defendant demurred to the petition generally: (1) because it set forth no cause of action; (2) because the alleged contract sued on is unilateral, is not binding on either party thereto, and is unenforceable in law, in that plaintiff in said contract does not bind himself to work and sell the articles enumerated therein, nor does defendant obligate himself to manufacture and ship them; (3) plaintiff seeks to recover damages for a breach of an alleged contract of employment, and does not allege that he sought employment elsewhere without success, or that he did anything required of him under the law to reduce the damages alleged to have been sustained, or that he had or had not actually earned anything during the period from the date of the alleged breach to the termination of the alleged contract. The defendant demurred specially to the paragraph alleging what would have been the plaintiff's expense in carrying out the contract, on the ground

that it was speculative and not based on facts; and to the paragraph as to the commissions the plaintiff could and would have earned by sales between the date of the breach and the termination of the contract, on the ground that "the allegations contained therein are purely speculative, prospective and not capable of either accurate or just ascertainment." The demurrer was overruled and the defendant excepted.

*George F. Gober, D. K. Johnston,* for plaintiff in error.

*Austin & Boykin,* contra.

BELL, J. (After stating the foregoing facts.) Only the fifth and seventh headnotes require elaboration. Where a contract of the character set forth in the statement of facts is breached by the employer, and the salesman sues for damages alleged to consist in the loss of profits which he would have earned directly under the contract but for its breach, the petition will be held good on demurrer if it furnishes reasonable data for computation, and if the loss is such as must have been within the contemplation of the parties when entering the contract. Damages which are the legal and natural result of the breach are not necessarily too remote to be recovered merely because they may be to some extent contingent. Civil Code (1910), § 4394; *Baldwin* v. *Marqueze,* 91 *Ga.* 404 (3), 411 (18 S. E. 309); *American Chemical Co.* v. *Rhodes,* 139 *Ga.* 495 (2) (77 S. E. 582); *Gore* v. *Malsby,* 110 *Ga.* 893 (3) (36 S. E. 305); *Fontaine* v. *Baxley,* 90 *Ga.* 416 (5) (17 S. E. 1015); *Stewart* v. *Lanier House Co.,* 75 *Ga.* 582 (1); *Western Union Telegraph Co.* v. *Fatman,* 73 *Ga.* 285 (4); *Carolina Portland Cement Co.* v. *Columbia Improvement Co.,* 3 *Ga. App.* 483 (2) (60 S. E. 279); *Tygart* v. *Albritton,* 5 *Ga. App.* 412 (1) (63 S. E. 521); *McIntosh* v. *Patton,* 12 *Ga. App.* 305 (3) (77 S. E. 6); *Mimms* v. *Betts Co.,* 9 *Ga. App.* 718 (1) (72 S. E. 271).

Where an agent selling on commission undertakes the sale of an article which is new to the trade, and which is being marketed by a manufacturer previously unknown, and actually solicits and obtains orders for such an article for a period of several months under a yearly contract, and where the employer then breaches the contract approximately five months before its termination, the sales made during the period of time in which the salesman was actually employed may furnish a reasonable basis for estimating the profits which he would have realized under the contract during

the remainder of the term, provided the loss thereof arose naturally and according to the usual course of things and is such as the parties contemplated or reasonably might have anticipated when the contract was made, as the probable result of its breach. Civil Code (1910), §§ 4394, 4395; *Baldwin* v. *Marqueze,* supra; *Chappell* v. *Western Railway of Alabama,* 8 Ga. App. 787 (1) (70 S. E. 208). A salesman after working a certain territory for a considerable period may, in the absence of a change in conditions, reasonably anticipate that at least for a limited time in the future his sales may be measured by what he has done in the past. His efforts have resulted in sales in the past. Nothing else appearing, it is reasonable to assume that with the same efforts his sales will continue generally throughout the territory, within the period of ordinary human foresight, in the same volume. He cannot anticipate or allege that he might have made sales to any particular person or persons, for in the very nature of the business his orders will be received at uncertain times and from uncertain persons in his territory, depending on his diligence, competition, and other contingencies. The results of his efforts in the past will be some assurance of what he might accomplish in the future. We think that the petition was good as against a general demurrer, inasmuch as the damages which the plaintiff alleged included those which he might properly have laid on the basis of the profits which had been realized by him during the period of the contract in which he was actually employed.

We think, however, that paragraph 26 of the petition was subject to the special demurrer interposed. In this paragraph it is alleged that the plaintiff's sales for the first month after his discharge would have exceeded those of the last month of his employment to the extent of 25 per cent., and that the sales of each month after his discharge would to the same extent have exceeded those of the preceding month. We think that the petition does not allege sufficient facts to warrant these conclusions as to the increase in the sales, but that here an element of uncertainty and speculation is improperly introduced into the computation of the damages claimed, and thus that the allegations of this paragraph, so far as they aver the corresponding increase in the profits which the plaintiff would have realized, are subject to the special demurrer that the alleged damage was speculative, prospective and

not capable of either accurate or just ascertainment. If the contract had been for a longer period, two years for instance, could the plaintiff claim that his sales and commissions would have increased in the alleged geometrical progression to the end of the term? Such a position would be utterly unreasonable, and the declaration does not disclose with sufficient certainty that such increase would have occurred during the approximately five months of the term which remained after his discharge. The reason for the increase in sales as *limited* by the petition is not such as to justify the conclusion drawn by the plaintiff in respect thereto. In our opinion, the averments in regard to such increase in the sales and resulting commissions during the time subsequent to the plaintiff's discharge are insufficiently supported by alleged facts, under the ruling of the Supreme Court in *American Chemical Co.* v. *Rhodes,* supra, to the effect "that claims of damage under breach of contract that are speculative in character and that are incapable of reasonably exact computation cannot be the basis of a recovery; the mere opinion of an agent selling on commissions, as to what sales he could have made but for the breach of the contract, does not afford sufficient certainty to be the basis of a recovery in damages." See also *Savannah &c. R. Co.* v. *Bonaud,* 58 *Ga.* 180 (2) ; *Smalls* v. *Brennan,* 14 *Ga. App.* 84 (80 S. E. 339) ; 13 Cyc. 49; 1 Sutherland Damages (4th ed.), 257, § 69. But if the defect in the petition may not otherwise be cured, it may be done by proper allegations for the recovery of damages on the basis of commissions on sales during the period, or intervals thereof, in which the plaintiff was actually employed. The question whether he should or should not be absolutely limited to a recovery upon such basis is not presented for decision. What we do rule is that the facts as now alleged in the petition fail to show that he is entitled to recover for the increase of commissions which it is averred he would have earned during the period following the breach. Furthermore, all that we have said is intended to relate to the sufficiency of a pleading, and not to the requisite proofs to sustain it.

    *Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*