30717.  WEATHERS BROTHERS TRANSFER COMPANY INC. *v.* JARRELL.

318

DECIDED APRIL 12, 1945.

324

330

*James L. Flemister, Noah J. Stone,* for plaintiff in error.

*Houston White, Margaret Hills,* contra.

GARDNER, J. ■ We have set out substantially, though briefly, the pleadings and the evidence submitted. We have also copied the charge in full, because there are a number of attacks made on it from different angles. In doing so we feel we can more clearly present our view concerning the various assignments of error. We will first deal with the general grounds and special ground 15, which latter ground deals with the question of agency, and which question of agency is also dealt with in the general grounds as well as in special ground 15. In analyzing the contentions of the defendant as to the general grounds these contentions may well be considered under a number of subheads, following the order of their arrangement in the brief of the plaintiff in error. We will endeavor to follow this order of arrangement in our discussion.

(a) At the outset it may be well to state that both parties agree that there was a contract between them whereby the defendant was to receive, pack, and crate the household effects of the plaintiff for shipment, and to store the same until such time as the plaintiff should furnish a shipping address, and that the effects were packed and held by the defendant until they were delivered for shipping.

In this connection it is contended by the plaintiff that the articles were not packed, crated, and braced in accordance with the terms of the contract. While on the other hand the defendant contends that they were packed, padded, and crated according to the terms of the contract. It is contended by the plaintiff that the failure of the defendant to pack, crate, and brace the articles in accordance with the terms of the contract caused the damage alleged; that the articles were not sufficiently padded or braced or enclosed in wooden containers to keep them from moving inside the containers and wracking and breaking from such movement, and from being crushed and jolted and broken from external pressure and force while being transported by freight as was within the contemplation of the parties at the time the contract was made. On the other hand, the defendant contends that the articles were packed as agreed, and that if any damage occurred in transit, such was not the result of the defendant's breach of its contract, but was caused and occasioned by some other agency after the shipment was released to the plaintiff under his order. In this connection it is contended that the defendant delivered the shipment to Yeoman Sims, the agent of the plaintiff, who inspected the shipment and received the same for the plaintiff as his agent; that in so doing the plaintiff by and through his agent is bound to the proposition that the defendant fulfilled its contract; that in thus receiving the goods in the condition the defendant packed them, the plaintiff can not now go behind this act and contend that the shipment was not packed, braced, and crated in accordance with the terms of the contract. This brings us then to inquire as to the authority of the agent Sims. It follows from the verdict that the jury necessarily concluded that the articles were not crated and packed in accordance with the terms of the agreement. Therefore this finding necessarily must stand unless Sims, as the plaintiff's agent, had authority to waive the terms of the contract. The difference between able counsel for both sides is not so much a disagreement as to the law of agency, but their differences consist in whether the evidence constitutes Sims a general or a special agent of the plaintiff in this particular transaction. This is to be determined from the record, by what Sims did and by what he was authorized to do, and by such inferences as a jury would be authorized to infer from the evidence that he was authorized to do and

did do or could have done. The Code, § 4-101, reads: "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf." Section 4-103 reads: "Whatever one may do himself may be done by an agent, except such personal trusts in which special confidence is placed on the skill, discretion, or judgment of the person called in to act; so an agent may not delegate his authority to another, unless specially empowered to do so." Section 4-301 reads: "The agent's authority shall be construed to include all necessary and usual means for effectually executing it. Private instructions or limitations not known to persons dealing with a general agent shall not affect them. In special agencies for a particular purpose, persons dealing with the agent should examine his authority." Section 4-303 reads: "A ratification by the principal shall relate back to the act ratified, and shall take effect as if originally authorized. A ratification may be express, or implied from the acts or silence of the principal. A ratification once made may not be revoked."

The above-quoted Code sections cover the necessary principles of law to be kept in mind in a discussion of this phase of the case. It nowhere appears from the evidence that Sims knew anything concerning the terms of the contract between the parties. It does appear that the household effects were packed by the defendant into sixty-eight containers, shortly after they were taken to the defendant's warehouse and before Sims had ever seen them. There is no evidence that these containers were opened and examined by Sims at the time he receipted for them and had them shipped under a navy bill of lading. The testimony shows that the only authority given Sims by the plaintiff was to receive the household effects from the defendant after they had been packed by the defendant, and Sims was to procure a navy bill of lading for the effects to be shipped to the plaintiff. It does not appear from the evidence that Sims was authorized to do more than this. This he did. Under the evidence, he was a special agent for this purpose and this purpose only. At the time that Sims did these acts the plaintiff was thousands of miles away. Hence there is no evidence at all that the plaintiff knew at this time that the defendant had not packed the household effects according to the terms of the contract. There-

334

fore it can not be successfully contended that the plaintiff ratified anything that Sims did or might have done in the way of changing the terms of the contract. It is elementary that before a principal can be bound by a ratification of the act of an agent he must at the time of ratification have full knowledge of all the material facts by which he is to be bound. Since it nowhere appears from the record that the plaintiff knew at the time Sims received the shipment from the defendant that the goods had not been packed in accordance with the contract, the principle of ratification does not apply. It follows from the evidence and what we have said that the jury were authorized to find from the evidence that the defendant did not comply with its contract in packing the articles for shipment. We deem it unnecessary to call attention here to the many decisions cited by able counsel for both sides on this question, for the facts of the cases cited differentiate those cases from the instant case, and since the evidence and no inferences which could be drawn therefrom could substantiate the conclusion that Sims was authorized to waive the terms of the contract between the parties, and since the evidence is insufficient as a matter of law to raise an issue as to ratification, the court did not err in failing to charge on this principle.

(b) This brings us to consider the question, did the failure of the defendant to pack the shipment in accordance with the terms of the contract cause the alleged damage, and was such damage within the contemplation of the parties at the time the contract was made? The Code, § 20-1406, reads as follows: "Remote or consequential damages are not allowed whenever they can not be traced solely to the breach of the contract, or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract." Section 20-1407 reads: "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach." It is contended by the defendant that the damages to the property, if any, under the evidence, did not "arise naturally and according to the usual course of things from such breach," and were not such as were contemplated by the parties when the con-

tract was made as a probable result of its breach, and that they were too remote and could not be traced solely to the breach. In support of the defendant's contention counsel cite *Georgia Railroad* v. *Hayden,* 71 *Ga.* 518 (51 Am. R. 274); *Andrews* v. *Kinsel,* 114 *Ga.* 390 (2) (40 S. E. 300, 88 Am. St. R. 25); and *Reynolds* v. *Speer,* 38 *Ga. App.* 570 (4) (144 S. E. 358). In our opinion the facts in the first two cases cited are so different from the facts in the instant case that we deem it of no use to refer to them further. In the last case, the fourth headnote reads: "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach. Civil Code (1910), § 4395. Damages which are the legal and natural result of the breach are not necessarily too remote merely because they may be to some extent contingent. Civil Code (1910), § 4394; *Walker* v. *Jenkins,* 32 *Ga. App.* 238 (5), (123 S. E. 161)." Let us refer briefly to the evidence in the instant case on this point. It is alleged and proved that the articles which were damaged were not packed, braced, and padded according to the terms of the contract, and that when the shipment reached its destination a number of the articles were damaged, although the outside of the containers was not broken. In this connection it was further alleged and proved that the articles were packed in such a manner that they were moved about and broken and wracked from being loosely thrown in the containers, in many instances without being padded or braced at all. From the evidence it is not difficult to conclude that the shipment would naturally be subjected to jars, to movement, and to external contacts with other articles. To illustrate, let us assume that the household effects, which are the subject-matter of this controversy, had been loosely thrown into boxes and cartons without any padding or packing or bracing, to be shipped across the continent by freight, could it for a moment be contended that they would not have, in the regular course of transit, been wracked and jolted and broken? We do not think so. Of course it is not for us to say whether or not they were properly packed in accordance with the terms of the contract. This was a jury question. Under the evidence in this case the jury was authorized to and did resolve it against the defendant. In doing so, no principle of law was transgressed.

(c)   The next question raised by the defendant in its argument on the general grounds concerns a barrel in which chinaware was packed.   The contents of this barrel were damaged.   It was alleged and proved by the plaintiff that the defendant agreed to have a wooden head in this barrel, and to pad and pack the contents securely; that instead of a wooden head a "burlap sack" was fastened over the top, and in transit the staves of the barrel were "stove in" at the top from external pressure, and the contents damaged because there was no wooden head on the barrel.   The defendant contends that it was not customary to put a wooden head on a barrel containing such articles, but by putting a burlap sack over the top the barrel would be kept upright and would be less subjected to damage; and that this barrel and its contents were packed according to the terms of the contract.   Again, this was a jury question.   The jury was authorized to find that the barrel was not packed according to the contract and that the failure to do so caused the damage.   In connection with this, alleged damage to a desk and a chest of drawers is also mentioned.   It is contended that the desk "had gouges in the top something similar as if a claw hammer had been used; that there were round gouges out of the surface like a sharp instrument had been dug into the top," and that an antique chest of drawers "had craters like a bombed airfield."   It is contended by the defendant that this evidence is sufficient to show that this damage could not have been such as the parties contemplated, and that it was caused by no failure of the defendant properly to pad, pack, and brace the contents of the containers.   From the record we think it is evident that reference to "craters like a bombed airfield" was understood by the jury to mean "figuratively speaking."   The testimony for the plaintiff does show, however, that if these articles had been padded in accordance with the terms of the contract, this damage could not have occurred.   We think the jury was authorized to find, under all the facts and circumstances revealed by this record, that the damage to these items was the subject-matter of a legitimate recovery.

(d)   The next items discussed under the general grounds are (1) a chinese screen.   The plaintiff alleges and the evidence shows that this was a very large screen of four sections, made to order

in China. On these four sections a continuous story had been inscribed. The sixty-eight packages receipted for by Sims arrived in California. One panel of the chinese screen was missing. The evidence showed that this last panel could not be replaced and the whole screen was worthless. (2) The other article mentioned was a wall mirror, not received in the shipment when it arrived in California. The defendant contends that since this mirror was not proved to have been damaged in any way, and since only one panel of the screen was proved to have been missing, the value of the mirror and the value of the entire screen were not chargeable to the defendant. We do not think this position is tenable. The jury was authorized to find that one panel of the screen was never packed and delivered to the plaintiff and his agent according to the terms of the contract, and that this rendered the entire screen of no value. They were also authorized to find that the defendant received the mirror and failed to pack it and deliver it to the order of the plaintiff, according to the terms of the contract.

(e) It is contended that the verdict is excessive and that the amount of the verdict is greater than the items of damage proved. We have checked each item of the property alleged to have been damaged, and as against it each item of damage proved. The damage to each article alleged and proved is the difference between the market-value of such item immediately before and immediately after the alleged damage. We think that the proved damages to these items, when added, total the same as the amount of the verdict rendered, and that there is evidence to support the finding of the jury.

(f) It is contended that the evidence of the plaintiff is self-contradictory, equivocal, opinionated, and circumstantial, and for these reasons insufficient as a matter of law to sustain the verdict. We can not agree with this contention either as to the premises or the conclusion, under the facts of the instant case. Of course we recognize the principle that "if the facts are consistent with either of two opposing theories, they prove neither." *Woodruff* v. *American Mutual Liability Ins. Co.*, 67 Ga. App. 554, 557 (21 S. E. 2d, 298) ; *Overstreet* v. *Metropolitan Life Ins. Co.*, 69 Ga. App. 459 (26 S. E. 2d, 115) ; *Southern Railway Company* v. *Newman*, 187 *Ga.* 132 (199 S. E. 753). The principle announced in the cited cases is not controlling under the facts of the instant case.

In so far as the contentions under the general grounds and special ground 15 are concerned, the court did not err in overruling the motion for a new trial.

■ Special ground 4 complains of the following charge of the court: "I am not going to read these papers in detail; they will be out with you and you may refer to them as often as you find necessary to see what the contentions of the parties are. These pleadings are not evidence; they are merely the contentions of the parties, and you may refer to them to see what their contentions are." By reference to the entire charge hereinabove set out, it will be noted that the charge informed the jury sufficiently as to the issues between the parties. In view of such coverage, this assignment does not require a reversal of the judgment. It is contended that under the particular record of this case wherein the petition was amended in various particulars, the jury could not, from the pleadings, determine the issues, and that the court should have instructed the jury more specifically without a request. See in this connection, *Hutcheson* v. *Browning*, 34 *Ga. App.* 276 (4) (129 S. E. 125); *Tharpe* v. *Cudahy Packing Company*, 60 *Ga. App.* 449 (4) (4 S. E. 2d, 49). As we have stated, the issues in this case were not so complicated, and the charge of the court so lacking in fullness as to be ground for reversible error.

■ Special ground 5 complains of the following excerpt from the charge: "Now, gentlemen, this case is based upon an alleged breach of contract, the language of which is as follows: 'I will pack, crate and haul the household effects of the above named officer for shipment by freight for the sum of $142.50. Packing and crating will be done in a manner conforming to usual commercial practice,' and, gentlemen, if in this case you find that to be the agreement between the parties to this contract, it is up to you to determine what the explanation of that phrase 'usual commercial practice' is. The plaintiff in the case contends, as he testified in the case, it was to be carried out in certain particulars, and in a certain manner. The defendant contends that it was to be carried out in another way. Whatever that should be would be strictly a question of fact for you to determine;—what interpretation was placed on that clause, at the time they entered into this agreement." It is contended that this charge is error: (1) that it is incorrect as an abstract principle of law; (2) that it gave the

plaintiff a benefit which he did not claim, and placed a greater burden on the defendant than was placed on it by the law; (3) that the court intimated and expressed an opinion as to what had been proved; (4) that it was unauthorized by the pleadings, contrary to law, and harmful and prejudicial to the movant. We will discuss these questions in the order named.

(1) The clause in the contract "usual commercial practice" was ambiguous and subject to explanation by parol evidence, the plaintiff contending that it meant one thing under the contract, and the defendant contending that it meant another thing. Under the facts of this case we are of the opinion that the charge as to this phase was not error. *Ford* v. *Lawson*, 133 *Ga.* 237 (65 S. E. 444).

· (2) It is alleged in the petition that it was within the agreement between the parties that the term "usual commercial practice" was agreed to mean one thing, and the defendant in its answer denied this. Under the pleadings and the evidence, this became a jury question, and the court did not err in submitting it.

(3) The defendant takes exception to this phrase from the charge quoted in this ground: ".As the defendant has testified." This phrase in its particular setting in the charge, viewed in the light of the entire charge, is not error. It is our duty to look to the whole charge to determine whether this phrase infringed upon the provisions of the Code, § 81-1104. In our view, it was merely thrown in inadvertently in outlining the contentions of the parties, and when viewed in the light of the whole charge does not amount to reversible error. This court held in *Washington* v. *State*, 24 *Ga. App.* 65 (4) (100 S. E. 31), as follows: "To determine whether an expression in an excerpt from the charge of the court is an expression or intimation of opinion on the part of the trial judge as to what has or has not been proved, it is proper, in a doubtful case, to construe the expression in connection with the entire charge, and where the trial judge elsewhere in his charge, in ample and unmistakable language, tells the jury that the particular matter about which it is claimed he has expressed an opinion as to its having been proved is an issue in the case, such expression will not be construed as an expression or intimation of opinion on the facts. *Hanvey* v. *State*, 68 *Ga.* 615; *Moon* v. *State*, 68 *Ga.* 697."

340

(4) This assignment of error, when considered in the light of the entire record, has no merit.

■ Special ground 6 assigns error on the following excerpts from the charge of the court: "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach. Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered; but damages traceable to the act, but not its legal or natural consequence, are too remote and contingent." Error is assigned on the grounds: (a) that the charge was argumentative and confusing to the jury, in that, in the first paragraph thereof the court charged the jury that the damages which were recoverable were those which arose naturally and according to the usual course of things from such breach and such as the parties contemplated, whereas the plaintiff sought to recover for loss of articles caused by a physical outside agency such as gouging holes in furniture, etc., and that such damages were not recoverable in a suit arising ex contractu; that the charge authorized the recovery of any damages that might arise naturally and according to the usual course of things as a separate and indispensable item which was not contemplated at the time the contract was executed; (b) that the charge in the second paragraph authorized the jury to return damages that were legal and a natural result of the act done regardless of whether such damages were in the contemplation of the parties at the time the contract was executed (it is contended that these two paragraphs are in direct conflict); (c) that the court nowhere explained the difference between the rules expressed in each of these paragraphs. The defendant contended that the rule applicable to a case sounding ex contractu for breach of a contract is only such damages as are within the contemplation of the parties at the time the contract was made; that measured by the pleadings on this phase of the case the plaintiff had no right to recover for loss of articles which was not traceable to failure to pack and crate the articles as alleged in the pleadings, and which was not a direct result of such failure, and that the court's charge is broader than the allegations of the pleadings and placed a higher degree of liability on the defendant than the law placed on it.

The Code, § 20-1407, provides: "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach." Section 105-2009 provides: "Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered; but damages traceable to the act, but not its legal or natural consequence, are too remote and contingent." Thus it will be seen that the principles of the two Code sections were charged, whereas the defendant contends that only the principle in the former was applicable. Under the pleadings and the evidence in this. case, we do not think the charge was error. The Supreme Court, in *Parker* v. *Forehand*, 99 *Ga.* 743 (28 S. E. 400) ; said: "His position before this court that, the action being merely for a breach of contract, the plaintiff could recover only special damages, and none of a more remote or consequential character, does not seem tenable, tested even by the ordinary rules governing the recovery in actions ex contractu. Our Code (§ 3073) expressly declares that, 'Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. But damages traceable to the act, but not its legal or material consequence, are too remote and contingent.' This rule is not confined to actions arising ex delicto, nor is it without qualification, as is shown by the succeeding section, which provides: 'If, however, the tort is committed, *or the contract broken, or the duty omitted,* with a knowledge and for the purpose of depriving the party injured of such benefits as are specified in the last paragraph, then the remote damages are made, by such knowledge and intent, a proper subject for consideration by the jury.' . . Such a rule is surely not to be held applicable to a case where it appears that the contract' is of such a nature that it must, of necessity, be known to the party deliberately and wrongfully violating his obligations that a breach of the same will inevitably result in the very kind of damages to the other party of which the declaration complains. In such a case, the inference is warranted that the damages in question, though to some extent remote and difficult of exact computation, must have been within the contemplation of both parties when entering into the contract; and where these damages are substan-

tial in the essential ingredient of actual injury, they justly call for compensation." See in this connection, *Martin* v. *Hight,* 30 *Ga. App.* 603 (118 S. E. 595); *Walker* v. *Jenkins, 32 Ga. App.* 238 (5) (123 S. E. 161); *Reynolds* v. *Speer,* supra; 5 Williston on Contracts, § 1344 et seq. Under the facts of the instant case, as revealed by the record, the court did not err in charging the principles of the above-quoted Code sections. There is no cause for reversal in this ground.

■ Special ground 7 complains of the following excerpt from the charge: "If, as contended by the plaintiff in this case, he entered into a contract with the defendant in the case, and if the defendant failed to carry out the contract as has been outlined by the plaintiff; and as a result of such breach of the contract, 'If you find that the contract was breached, that that was the cause of the property being damaged, and as contended in plaintiff's petition, then, gentlemen, the plaintiff in this case would be entitled to recover.'" It is contended that the words in this excerpt "contended by the plaintiff" followed with the statement "that the defendant failed to carry out the contract as has been outlined," etc., was an expression of opinion by the court to the effect that the plaintiff had proved his case as contended. Counsel cite in support of this contention *Southern Railway Company* v. *Williams,* 139 *Ga.* 357 (6) (77 S. E. 153). We do not think this case is controlling in the instant case to the extent that it requires a reversal, when we view the charge as a whole. We deem it unnecessary to go into detail in an analysis of the numerous decisions on this question. The charge as a whole speaks for itself. Hence it is that we have set it out in full. This ground does not require a reversal.

■ Special ground 8 complains of the following excerpt from the charge: "You have the right to take into consideration the amount of repairs made necessary, in determining the amount of the damages." It is contended that these instructions authorized the jury to add as damages the amount of the repairs. We do not think the excerpt, in view of the whole charge, is susceptible of this construction. It is our opinion that the jury understood that the amount of repairs was an item or circumstance which they might consider in determining the amount of the damages. We

here again make reference to the entire charge. *Olliff* v. *Howard,* 33 *Ga. App.* 778 (127 S. E. 821).

█ Special ground 9 complains of the following excerpt from the charge: "I instruct you that if the plaintiff's property in question was damaged while in transit, and that it was damaged by reason of the fact that it was not properly packed, set or braced, as contended by the plaintiff, the defendant in the case would be liable." It is urged that this charge was not adjusted to the pleadings; that it placed upon the defendant a burden greater than that placed upon it by the law and that it was confusing to the jury. By reference to the pleadings and the evidence as given in the statement of facts, and in view of the whole charge, this ground is not error for any of the reasons assigned.

█ Special ground 10 complains of the refusal of the court to permit the plaintiff while under cross-examination to answer the following question, which was propounded to him by counsel for the defendant: "Q. The importance with which the language is written [meaning the language of the alleged contract]—would you say that it would require that this warehouse prepare and pack the goods and crate them to go anywhere in the world?" Counsel for the plaintiff objected to this question. The court sustained the objection. While we think that perhaps under the pleadings the question was permissible, yet since the pleadings alleged and the evidence showed that the goods were shipped from Atlanta to San Francisco, it could not harm the defendant's case for the court to refuse to permit the witness to answer. We think the real issues before the jury were whether the defendant had packed the articles in accordance with the agreement, and if not, did the failure to do so result in damage to the goods? And if damaged, did the damage form a basis for a recovery?

█ Special ground 11 complains of the following incident during the trial: The plaintiff was on the stand testifying when he was asked, "I hand you this list that Mr. Flemister asked you about but didn't identify; I will let it be identified as plaintiff's Exhibit 3; what sort of list did Mr. Estes agree to give you? Did he give you a list?" The witness answered in substance that the defendant agreed to give him a list, numbering each container and specifying the articles within each container, in order that the plaintiff might know what articles were in each container without

344

opening the container; that the same household effects had been shipped from Manila to San Francisco and from San Francisco to Atlanta without any damage or breakage at all; and that the witness had seen the goods packed in Manila and such a list was furnished him there, and Estes agreed to furnish him a similar list. This question and answer were objected to on the ground that what was done in Manila was immaterial, irrelevant, and prejudicial as evidence in the instant case. The court ruled that "he [meaning the witness] can explain what he [meaning the defendant] gave him [meaning the plaintiff]." Under the record in this case and the issues involved, this assignment of error is without merit. This is true even though the ruling of the court might be considered to mean what the defendant interprets it to mean. We doubt that special ground 11 assigns any error at all. If it should be so construed, the same is without merit.

■ Special ground 12 complains of error because the witness, Mr. Estes, while on the stand testifying for the plaintiff, was asked whether or not the defendant packed and crated the articles in conformity with the understanding between the plaintiff and the defendant, to which question the witness answered "yes." This question and answer were objected to by the plaintiff on the ground that such was a conclusion or opinion of the witness. The court sustained the objection. In our opinion, abstractly, this was error. We understand the law to be that the witness should be permitted to state his conclusion provided he gives the facts upon which it is based, under the provisions of the Code, § 38-1708, and *Mills* v. *State,* 71 *Ga. App.* 353 (30 S. E. 2d, 824). In such a situation the jury may take into consideration such conclusion with respect to the ultimate fact to be determined by them. The conclusion which the witness in the instant case gave did not involve expert testimony as dealt with in the Code, § 38-1710. See *Mills* v. *State,* supra. We think a fair interpretation of the record to be that the defendant had testified that the way the goods were packed and crated was in accordance with the understanding of the parties. But we also think from an overall view of the case, that this question was so clearly presented by the pleadings and the evidence for the defendant that this technical error was not harmful and prejudicial as contended, and does not require a reversal of this case.

■ Special ground 13 assigns error because the court illegally refused to let counsel for the defendant complete the record to the extent that the ruling was harmful and prejudicial and requires the grant of a new trial. The plaintiff's petition alleged that no conditions were placed upon such shipment by the common carrier except that the packages in which the articles were shipped appeared to be in good order and condition. When Mr. Estes, a witness for the defendant, was on the stand, the following question was propounded to him: "Do you know from experience whether or not carriers or railroads will accept shipments unless they have been inspected?" Counsel for the plaintiff objected to an answer to this question on the ground that "it would be hearsay." The court sustained the objection. Counsel for the defendant responded: "As to anything he knows about what they will accept, it certainly is not hearsay." Whereupon counsel for the plaintiff further objected because "it is immaterial and irrelevant and calls for a conclusion." The court ruled, "Unless he connects it up with this furniture;" whereupon counsel for the defendant stated, "Of course, your honor, what we are endeavoring to do here, we have no way in the world." Then the court stated, "I have ruled on that. Go ahead." We think the only fair interpretation of this ruling is that the court meant for counsel for the defendant to proceed to connect it up with this furniture. We have given verbatim the words of the colloquy as shown in this ground. Counsel for the defendant did not, so far as the record in this ground is concerned, pursue the matter further. It is not clear from the record just what the ruling meant, neither is it clear just what counsel for the defendant was denied the privilege of completing. No further request was made to complete the record. It appears from the meager assignments of error in this ground that the ruling of the court was to the effect that if counsel for the defendant connected the incidents with the shipment of furniture, the court would permit the evidence to go to the jury. This assignment is without merit.

■ Special ground 14 assigns error because of a remark of the court. When Peppers, a witness for the defendant, was on the stand he was asked whether he turned the merchandise in question over to Sims. The witness answered that he did. The witness was then asked whether Sims accounted for all the items on the

warehouse list. The witness replied that he checked the warehouse list item by item first, and then signed for them. Counsel for the plaintiff objected to this testimony "as being a statement as to the act of an agent, supposed to be an agent," whereupon the court remarked, "I will leave it in. It does not show anything except Sims's individual acts." Where there is an issue of fact under the evidence regarding the extent of an agent's authority, this becomes a question for the jury to decide; but where the evidence demands a conclusion as to the extent of the agent's authority, it then becomes a question of law for the court's determination. As we have held in division 1(b) of this opinion, the evidence in this case shows as a matter of law that, in receiving the shipment from the defendant, Sims was not authorized to waive the terms of the contract which the plaintiff and the defendant agreed upon. This assignment is without error. We have heretofore observed that Sims signed a warehouse receipt which was introduced by the defendant, and which so far as the evidence goes was never forwarded to the plaintiff by Sims or anyone else, and that this receipt shows that sixty-eight packages were receipted for by Sims from the defendant, and that these sixty-eight packages were received in San Francisco with some of the containers crushed but none broken externally. It is clear, from the record, that Sims did nothing more than sign for these articles in their original containers as they were delivered to him by the defendant. In view of these things, in our view of the law as applied to the facts in this case, the remark of the court herein complained of, while perhaps inadvertent, does not form a basis for reversal for any of the reasons assigned.

Special ground 16 is somewhat in the nature of the general grounds, in that it contends that the verdict is unsupported by the evidence—that the amount of the verdict exceeds the amount of damages shown by the evidence. It is further contended that the amount of the verdict was considerably and unjustly increased due to the fact that the plaintiff, a commander in the United States Navy in active service in the present war, appeared on the witness stand in his uniform with a manual of rules and regulations of the Navy in his hand while testifying, and that he thus unduly influenced the jury to the bias and prejudice of the defendant. The evidence sustains the verdict and this ground is without merit.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*